Taged, Incorporated, et al. *v.* Zoning Board of Adjustment and Shields, et ux.,
Intervenors.

332

Argued June 5, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Leonard M. Mendelson*, with him *David J. Millstein* and *Hollinshead & Mendelson*, for appellants.

*Richard L. Rosenzweig*, with him *Rosenzweig & Rosenzweig*, for appellee.

*Sheldon L. Keyser*, with him *Jerome M. Meyers* and *Meyers & Keyser*, for intervenors.

OPINION BY JUDGE MENCER, September 21, 1972:

This appeal stems from our decision in *Taged, Inc. v. Zoning Board of Adjustment of Monroeville*, 2 Pa. Commonwealth Ct. 52, 276 A. 2d 845 (1971), wherein we sustained the appeal of the present appellants who had been unsuccessful in their attempts to gain a special exception from the Zoning Board of Adjustment of the Borough of Monroeville (Board) and, on appeal, from the Court of Common Pleas of Allegheny County. In reversing on *May 6, 1971*, we vacated the order of the Board and remanded the matter to the lower court for action consistent with our opinion. We made no disposition as to costs.

On *August 2, 1971*, the Supreme Court denied appellees' Petition for Allowance of Appeal. Four days later, on *August 6, 1971*, in compliance with our order,

the lower court ordered that appellants be granted a special exception. Thereafter appellants sought to file a bill of costs with the Prothonotary of the Court of Common Pleas of Allegheny County and to have the record costs taxed against the Borough of Monroeville, appellee, and Edward D. Shields, and Rose J. Shields, his wife, intervening appellees. Because the Prothonotary resisted these efforts,[1] appellants, on *August 23, 1971*, presented a petition to the lower court for allowance of record costs as against the Board and the intervenors. On *February 4, 1972*, the lower court dismissed without prejudice appellants' petition. Appellants then filed on *February 23, 1972*, a separate appeal in this court at No. 209 Commonwealth Docket 1972.[2]

Appellants rely on the Act of April 15, 1907, P. L. 83, §1, 12 P.S. §1193, and on the Act of June 5, 1913, P. L. 422, §1, 12 P.S. §1195, both acts having been most recently amended by the Act of June 3, 1971, P. L.    , No. 6, §1, which, *inter alia*, amended Section 509 ("Repeals and Savings Provisions") of the Appellate Court Juris-

[1] Counsel for appellants gave this explanation: "In the course of oral argument, the question was raised as to why we did not file a bill of costs in the Prothonotary's Office of the Court of Common Pleas of Allegheny County. I stated that we had attempted to file such a bill and were refused since the local practice required either acceptance of service of the bill of costs, which we could not obtain, or an order of court, for any bill of costs in excess of $20.00. This particular local rule was Rule 28 of the Allegheny County Court of Common Pleas Rules. Rule 28 has since been eliminated, but it had been the practice of the clerks to continue to refuse bill of costs in excess of $20.00 until a very few months ago."

[2] Appellants filed with this Court a Petition for Allowance of Record Costs which was docketed at 988 Transfer Docket 1970. Disposition of this petition would then have followed without the necessity of a separate appeal at 209 Commonwealth Docket 1972. The latter appeal, on May 2, 1972, was consolidated with the petition filed at 988 Transfer Docket 1970 for purposes of argument because identical issues of fact and law were involved.

diction Act of 1970 (ACJA), Act of July 31, 1970, P. L. 673, No. 223, 17 P.S. §211.509(a)(48) and (58).[3] A comparison of the wording of §§1193 and 1195, before and after amendment, will reveal that only the words referring to the Supreme Court and to the Superior Court were omitted in each instance so as to include by omission the Commonwealth Court and thereby to make each section universally applicable to all three state appellate courts.

---

[3] Except for the words within brackets, which have been deleted by the Act of June 3, 1971, P. L.    , No. 6, §1, Sections 1193 and 1195 now read as follows:

Section 1193. "In all cases, either in law or equity, wherein an appeal is taken from any judgment, decree, or order, [to the Supreme or the Superior Court] the party in whose favor the final decision is rendered shall be entitled to charge, and collect from the losing party as part of the costs, such amount as shall have been expended for printing paperbooks upon said appeal. The cost of printing the paperbook of each party shall be taxed as costs, collectible by the attorney of record of such party in such appeal. Said amounts to be taxed and collected in the same manner as costs are now taxed and collected by law."

Section 1195. "In all appeals, [to the supreme or superior court] when the judgment, order, sentence, or decree is reversed by said appellate court, without a venire or order and judgment as to the payment of costs, the lawful costs in said case, taxed in the lower court, shall be paid by the losing party in such appeal; and, on the filing of the remittitur in said lower court, the proper officer shall enter judgment against said losing party, upon which judgment due process may issue for the collection thereof: Provided, however, That process to collect the said costs may be stayed if the court below shall determine the case is not finally closed between the parties, and the said losing party, or legal representative, shall bring a new action for the same cause of action against the other party, or legal representative, within thirty days after said determination. When such second or other action is brought, the collection of said costs shall be postponed until the final closing of said action, when said costs shall follow the judgment in said second or other case relating to the same cause of action. In default of said second or other action, the judgment for costs shall be final."

Appellants argue that these changes apply to the costs of appeal in *Taged, Inc., supra,* filed *May 6, 1971,* because the amending act of *June 3, 1971,* made the changes retroactive to the date on which the Appellate Court Jurisdiction Act of 1970 was approved, *July 31, 1970.* This is a somewhat faulty argument however, because §3 of the Act of June 3, 1971, P. L.     , No. 6, §3, provided: "This act shall take effect immediately and shall be retroactive to the *effective* date of the Appellate Court Jurisdiction Act of 1970." (Emphasis added). Although approved on July 31, 1970, the ACJA actually took "effect ten days after final enactment or ten days after the Governor issues the proclamation specified in The Commonwealth Court Act, whichever is later." Act of July 31, 1970, P. L. 673, No. 223, 17 P.S. §211.510. On September 1, 1970, the Governor issued a proclamation declaring that the Commonwealth Court was organized and ready for transaction of its judicial functions. As a result the ACJA took effect on *September 11, 1970.* That date occurred long before the date we decided *Taged, Inc.,* May 6, 1971, but the losing party is responsible for the costs which are taxable under the law at the time the appeal is filed or taken, *City of Philadelphia v. Kelly,* 82 Pa. Superior Ct. 112 (1923), not the law at the time the appeal is *decided.* Furthermore, where the appeal is filed prior to the effective date of the ACJA, it is governed by prior law. *John Wanamaker, Philadelphia v. School District of Philadelphia,* 441 Pa. 567, 274 A. 2d 524 (1971). The appellants filed their appeal to the Supreme Court on *August 6, 1970,* more than a month before the effective date of the ACJA (that appeal, 988 Transfer Docket 1970, was transferred to this court on September 14, 1970). Consequently, §§1193 and 1195 as they existed before amendment apply to the costs of appeal in *Taged, Inc., supra.*

Initially we note that the Board is protected against the imposition of costs by §1010 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P. L. , No. 247, 53 P.S. §11010: "No costs shall be allowed against the board, unless it shall appear to the court that the board acted with gross negligence or in bad faith or with malice." No misconduct by the Board has been alleged.

Intervening appellees, Mr. and Mrs. Shields, claim this same protection citing Rule 2330(a) of the Pennsylvania Rules of Civil Procedure: "After the entry of an order allowing intervention, the intervenor shall have all the rights and liabilities of a party to the action." The Rules Committee appended a note to Rule 2330: "The provision giving the intervenor the rights and liabilities of a party will give him the same status as an original party as regards such matters as jury trial challenges, participation at trials and liability for costs."

The Shields argue that if the Board has a right to protection, so do they, or conversely, if the Board has no liability for costs, they do not either. Rule 2330(a), however, reads "*a* party to the action", and the appended note reads "*an* original party" making it clear that an intervenor has the same rights and liabilities not only as the party he joins but as the opposing party as well. Here the Shields' have the same status as the Board *and the appellants*. Except in unusual circumstances, the Board has statutory immunity from the imposition of costs which, of course, cannot extend to a private litigant. But the intervenors are as liable for costs as the appellants would have been had they lost. Certainly if the Shields' had won an appeal, they would demand reimbursement for their costs from the appellants. Therefore we conclude that, in a case at law, an outsider to the record who intervenes as a party

to the suit and who is unsuccessful is liable, either alone or jointly with other parties, for all costs in the action accruing after his intervention. Accord, *Richman v. Zoning Board of Adjustment*, 391 Pa. 254, 137 A. 2d 280 (1958) (where the Supreme Court imposed costs on the intervening appellee after reversing the order of the lower court which had, as in this case, affirmed the Zoning Board of Adjustment).

It is evident that appellants, by initially appealing to the Supreme Court, complied with the then §§1193 and 1195. Therefore, since the final decision was rendered in favor of appellants, they should be entitled to the costs of printing their paperbooks, including the record, as well as to "the lawful costs in said case, taxed in the lower court."

As to the latter costs, appellees argue that no bill of costs has ever been filed in the court below and that appellants' filing of a bill of costs in this Court incident to this appeal was untimely. We cannot agree. As previously noted,[4] appellants attempted to file a bill of costs with the Prothonotary of the Court of Common Pleas of Allegheny County sometime between August 6 and 23, 1971, just over one year after the lower court denied their appeal. But we note the following from 1 Laub, Pennsylvania Keystone, *Costs* §1 (1964): "There is no statute of a general nature which imposes a limitation on the time within which a cost bill must be filed or the costs of a case taxed. Therefore, when a case has been appealed, the taxation of costs can be deferred until after the appeal has been disposed of and the case finally adjudicated. Fife v. The Great A. & P. Tea Co., 169 Pa. Superior Ct., 110, 82 A2d 271 [1951]. However, if there is an unconscionable delay and the losing party suffers harm thereby, there is some likelihood that late taxation might be refused."

---

[4] See note 1, *supra*.

There was no unconscionable delay here, nor have the losing parties suffered harm. Appellants filed a bill of costs shortly after the lower court, in compliance with our order, granted appellants a special exception.

Although a bill of costs for appeal No. 988 Transfer Docket 1970 has been filed with this court incident to this appeal, we are not in a position to rule on the correctness of the docket costs and witness bill included in that bill of costs. We shall remand those two categories of the bill of costs to the lower court so that "the lawful costs in said case, taxed in the lower court" might be accurately scrutinized and approved.

Appellants' costs of printing their brief and the record are properly before us. We conclude that appellants are entitled to reimbursement for the cost of having their brief printed. Appellees contend, however, and we must agree, that appellants caused to be printed in the record much extraneous matter. Approximately one-third of the printed record could easily have been omitted as unnecessary. Our Rule 86(6) specifically states that the record is to contain only "[s]o much of the evidence as is necessary to be considered by this Court in passing upon the questions raised on appeal." Our Rule 88 states, in pertinent part, that "[e]vidence (including exhibits), which has no relation to or connection with the questions involved or errors assigned must not be printed, nor must deeds or long documents, the construction or validity of which are not in issue, but only such parts thereof as are necessary for a proper consideration of the case." It makes no difference that the appeal was first taken to the Supreme Court because Supreme Court Rules 49(7) and 52 are equally applicable.

However, appellees did not raise this issue at any time earlier in these proceedings. They could have

filed a motion with this Court, under our Rule 85, to suppress the record or quash the appeal. In the alternative, the Act of May 11, 1911, P. L. 279, §5, as amended, 12 P.S. §1200, provides that either the lower court or the appellate court may, by order, limit the evidence to be printed on appeal. At this late stage in the proceedings, it should not be the duty of the courts to use hindsight in determining what matters should or should not have been printed. Such an issue must be raised prior to or during the hearing on the merits, not during later appellate proceedings as to costs. *Christman v. Segal,* 150 Pa. Superior Ct. 516, 29 A. 2d 107 (1942) ; *Figlarowicz v. Somerset Electrical Co.,* 69 D. & C. 60 (1949). Properly, appellants, pursuant to Rule 88, should have filed in this Court, prior to printing the record, a general statement of the issues raised by the appeal indicating what evidence, if any, was to be omitted in the printed record. No such statement was ever filed in the present case by appellants, but we note the following from *Christman*: "We think the proper construction of the Rule requires an appellant to file [with this Court], before he commences the printing of the record, a brief statement of the questions he intends to argue even though he intends to print all the evidence. Since the party who is successful in the court below may ultimately be the losing party and be burdened with the costs, this practice would furnish appellee a suitable opportunity to minimize the costs by a reduction of the record to its essential proportions. No such statement was filed in the present case. But having been given no opportunity to raise the question in the court below, we think it better practice to require appellee to raise it either by a petition to suppress appellant's paper books or a petition to quash the appeal or at least to call the matter to our attention at the time of oral argument. This

would facilitate the disposition of the question for this court because it would give us an opportunity to consider the matter at the same time the merits of the case are passed upon. We do not regard it as a valid excuse for his failure to do either of these things that, at the time of argument in this court, appellee was the successful party. *We think it is more reasonable to assume that, if a violation of the rule is not called to our attention at that time, the violation is deemed to be waived.*" 150 Pa. Superior Ct. at 519-20, 29 A. 2d at 109 (emphasis added).

At this late stage, the only exception to this rule is where, as here, the printed extraneous matter is so alien to the issues presented and so blatantly unnecessary that the court is not required to use hindsight to determine the matter's usefulness. Thus, where the appellant unnecessarily increases the cost of the record by printing substantial amounts of evidence which are not relevant to the issues on appeal, the cost of printing the record may be imposed upon the appellant even though he is the successful party, but the other costs will be imposed upon the appellee. *Zidek v. West Penn Power Co.,* 145 Pa. Superior Ct. 103, 20 A. 2d 810 (1941); *Long's Estate,* 143 Pa. Superior Ct. 176, 17 A. 2d 686 (1940).

Therefore, mindful that "the courts of this Commonwealth for over a century and a half have applied a standard of reasonableness on the issue of costs," *Commonwealth v. Giaccio,* 415 Pa. 139, 146, 202 A. 2d 55, 59 (1964), and that the purpose of allowing parties to intervene in a legal action, as the United States Supreme Court explained long ago in connection with a private two-party suit, is "to prevent a failure of justice," *Krippendorf v. Hyde,* 110 U.S. 276, 285, 4 S. Ct. 27, 31, 28 L. Ed. 145, 149 (1884), we direct that as to appeal No. 988 Transfer Docket 1970, the intervening

342

appellees, Edward D. and Rose J. Shields, shall pay two-thirds, or $2,177.20, of the appellants' entire printing bill, and so much of the docket fees and witness bill as the lower court shall deem correct.

The order of the Court of Common Pleas of Allegheny County is reversed and the record is remanded for action consistent with this opinion. Costs of this appeal, No. 209 Commonwealth Docket 1972, to be paid by the intervening appellees, except, for the reasons stated in note 2, *supra,* the filing fee in this Court which shall be paid by the appellants.