City of McKeesport and John E. Pribanic, Appellants *v.* Thomas J. Fullard, Appellee.

394

Argued May 4, 1976, before President Judge Bow-
MAN and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS and BLATT. Judge KRAMER did not par-
ticipate.

*P. Jerrome Richey,* with him *David M. Priselac,*
for appellant.

*Mord C. Taylor, Jr.,* for appellee.

OPINION BY JUDGE BLATT, September 23, 1976:
On November 6, 1973, the voters of the City of Mc-
Keesport (City) elected John E. Pribanic as mayor
of the City for a four-year term beginning in January,
1974 and, at the same time, they adopted a home rule
charter pursuant to the provisions of the Home Rule

Charter and Optional Plans Law[1] (Act 62). The new charter was to take effect on January 5, 1976. In February, 1975, the City Clerk and City Solicitor filed an amicable action in mandamus to have the Court of Common Pleas of Allegheny County determine which elected offices under the new charter, if any, would be filled at the next general election in November, 1975. On February 13, 1975, the lower court decided: (1) that the voters of the City had adopted the home rule charter filed on August 23, 1973 with the City Clerk and certified to the county board of elections; (2) that a new mayor would be elected at the November, 1975 election; and (3) that the present mayor[2] and two other members of council whose terms did not expire at the end of 1975 would continue in office as members of council pursuant to Sections 303 and 702 of the charter[3] with the same compensation as provided at the time of their election. No appeal was taken from this decision. Pribanic filed as a

[1] Act of April 13, 1972, No. 62, §101 et seq., as amended, 53 P.S. §1-101 et seq., commonly referred to as Act 62.

[2] Under the Third Class City government in effect previously, the mayor was a member of city council and executive duties were divided among the various council members.

[3] Section 303 of the Home Rule Charter of the City of McKeesport (Charter) provides, in part, as follows:

"The regular election of councilmen shall be held on the general municipal election day as established from time to time by the laws of the Commonwealth of Pennsylvania commencing in the year 1975. *At the first election under this Charter four (4) councilmen shall be elected. The three (3) elected officials, two councilmen and mayor, with unexpired terms shall serve as councilmen.*" (Emphasis added.)

Section 702 of the Charter provides as follows:

"The Mayor shall be elected by the qualified electors of the City at large for a term of four (4) years, commencing at 8:00 P.M. on the first Monday of January following the year in which he is elected. . . ." The lower court ruled that these two sections, when read together, provided for the election of a Mayor in November, 1975.

candidate for the Democratic nomination for mayor at the spring primary in 1975 and won the nomination, but he lost the mayoral election in November, 1975 to Thomas J. Fullard.

On December 15, 1975, Pribanic filed a complaint[4] in equity against Fullard in the Court of Common Pleas of Allegheny County asking the court to order that he (Pribanic) should "hold title to the office of Mayor of the City of McKeesport for the remainder of the term to which he was elected, until the first Monday in January, 1978." Fullard filed preliminary objections which alleged: (1) that the proper procedure to determine the title to an elected office was quo warranto, not a complaint in equity; (2) that Pribanic was guilty of laches; and (3) that the complaint was an improper attempt to appeal the court order of February 13, 1975. The lower court held a hearing and thereafter sustained Fullard's objections and dismissed the complaint. Pribanic has now appealed, and we must affirm the lower court.

Our review of the lower court's decision has been made very difficult by its failure to file an opinion in this case. We believe, however, that its decision was correct and that the interests of the people of the City of McKeesport will be better served by our final disposition of this case rather than by a remand to the lower court for the entry of an opinion.[5]

---

[4] The City of McKeesport had joined with Pribanic in bringing this action, however, on April 2, 1976, President Judge JAMES S. BOWMAN granted the City's petition to withdraw from this appeal.

[5] Pribanic has invoked our jurisdiction pursuant to Section 402(4)(ii) of the Appellate Court Jurisdiction Act of 1970 (Act), July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.402(4)(ii) which provides, in part, that the Commonwealth Court shall have exclusive jurisdiction, except as provided in Section 202, of appeals from final orders of the courts of common pleas in all actions where there is drawn in question the application or interpretation of any home rule charter. Section 202(2) of the Act, 17 P.S. §211.202(2), reserves exclusive jurisdiction to the Supreme Court over all appeals from

Quo warranto is the sole and exclusive method to try title or right to public office[6] and can be brought by an Attorney General, a District Attorney, or "a person who has a special right or interest . . . **or** [who] has been specially damaged." *Mayer v. Hemphill,* 411 Pa. 1, 6, 190 A.2d 444, 446 (1963); *DeFranco v. Belardino,* 448 Pa. 234, 292 A.2d 299 (1972). It is clear that Pribanic had a special interest in determining title to the office of mayor and, therefore, he could have instituted a proceeding in quo warranto. We believe that Pribanic's failure to bring the action in quo warranto is fatal to his cause. *See League of Women Voters of Lower Merion and Narberth v. Lower Merion Township Board of Commissioners,* 451 Pa. 26, 301 A.2d 797 (1973).

Furthermore, our Supreme Court has held that

"[l]aches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him."

---

courts of common pleas in cases which involve the determination of the right to public office. We believe, however, that Fullard's failure to file an objection to our jurisdiction has perfected such jurisdiction pursuant to Section 503(a) of the Act, 17 P.S. §211.503 (a). *See Scranton Housing Authority v. Scranton,* 4 Pa. Commonwealth Ct. 255, 284 A.2d 148 (1971).

[6] Exceptions to this rule have been required for three reasons: "'(1) quo warranto does not always furnish an adequate and full remedy; (2) the wisdom of applying a remedy which will avoid a multiplicity of suits; (3) the paramount right of the public to have a surer and more adequate remedy to restrain wrongful acts by a public official, including the unlawful expenditure of public money. Where such circumstances exist, equitable relief has been granted through a taxpayer's bill or other injunctive or equitable remedy. [Citations omitted.]'" *DeFranco v. Belardino, supra,* 448 Pa. at 237, 292 A.2d at 300.

We do not believe, however, that any of these exceptions are applicable here.

*Grote Trust*, 390 Pa. 261, 269-270, 135 A.2d 383, 387 (1957) ; *Townships of Springdale and Wilkins v. Kane*, 11 Pa. Commonwealth Ct. 254, 312 A.2d 611 (1973). We believe that, based upon the facts contained in the record, Pribanic is guilty of laches by not appealing from and thereby acquiescing in, the court's decision of February 13, 1975,[7] by participating in a primary and general election pursuant to said decision, and by failing to take any legal action until after he had lost the general election. We believe further that this case is a clear one where the preliminary objections were properly sustained. *See Silver v. Korr*, 392 Pa. 26, 139 A.2d 552 (1958).

While we do not reach the merits of this appeal, we have examined the arguments raised by Pribanic due to the importance of this matter to the people of the City of McKeesport, and have found them to be unconvincing.[8] The order of the lower court is hereby affirmed.

---

[7] It seems clear that Pribanic could have intervened in the city clerk's suit pursuant to Pa. R.C.P. 2327 which provides, *inter alia*, as follows:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

. . . . .

"(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

Pribanic would have then had all of the rights of a party to the action, Pa. R.C.P. 2330, including, of course, the right to appeal the decision. The court's opinion in the city clerk's suit stated that all elected officials of the City received personal service, where possible, of the proceedings and Pribanic admitted that he attended both days of hearings. There can be no doubt that Pribanic was aware of the court proceeding.

[8] Pribanic asserted on appeal that his right to continue in office as mayor was protected by Section 306 of Act 62 which provides that "[a]ll elective officials of the municipality in office at

Judge CRUMLISH, JR. concurs in the decision only.

the time of the adoption of a home rule charter shall continue in office until their terms expire." We believe, however, that Section 1262(d) of Act 62, while not controlling, would suggest that a mayor who was a member of council under an existing form of government should remain in office as a member of council with only those duties provided for councilmen by the home rule charter and that was, in fact, the decision reached by the lower court on February 13, 1975.

Pribanic also claims that his right to be mayor is protected by Article 6, Section 7 of the Pennsylvania Constitution which governs the removal from office of an elected officer. The defect in Pribanic's argument is, however, that the City had been previously governed by a city council, the mayor being the voting head of council, and the new charter altered the form of government to a "strong mayor" or executive form. Under the "strong mayor" form of government, the mayor no longer sits on council, but instead enjoys the powers of an executive officer (as opposed to those powers of a legislative member). We believe, therefore, that the office of mayor which Pribanic occupied was lawfully abolished by the new charter and, therefore, the constitutional protection of Article 6, Section 7 does not apply here. See *Suermann v. Hadley*, 327 Pa. 190, 193 A. 645 (1937); *Commonwealth v. Moir*, 199 Pa. 534, 49 A. 351 (1901); 2 McQuillin, Municipal Corporations, §§9.08, 9.30 (Revised 3rd Edition 1966); 3 McQuillin, Municipal Corporations, §§12.118, 12.119, 12.121 (Revised 3rd Edition 1973).