546 A.2d 50

**In re Appeal of the MUNICIPALITY OF PENN HILLS and Penn Hills School District from the Action of the Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania on Property of U.S. Steel Corp., Universal Atlas Cement Co. Situate in the Municipality of Penn Hills, Property Owned by U.S. Steel Corp., Universal Atlas Cement Co.**

**Appeal of MUNICIPALITY OF PENN HILLS and Penn Hills School District.**

Supreme Court of Pennsylvania.

Argued March 10, 1988.

Decided Aug. 17, 1988.

166

Leonard M. Mendelson, Hollinshead and Mendelson, Pittsburgh, for appellants.

William P. Bresnahan, Rothman, Gordon, Foreman and Groudine, P.A., Pittsburgh, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

McDERMOTT, Justice.

This appeal arises from the real estate tax assessment made by the Allegheny County Board of Property Assessment, Appeals and Review with regard to commercial property located in the Municipality of Penn Hills. This property was registered in the name of Universal Atlas Cement Company. However, the actual owner of the property was United States Steel Corporation. For tax year 1984 the Board assessed the property in the amount of $335,500.00.

On February 28, 1984, Penn Hills and the Penn Hills School District (hereinafter "Taxing Authorities") filed a timely appeal to this assessment with the Board. The appeal challenged the assessment on the grounds that the assessment was too low, in that it was based on a fair market value less than 25% of the actual value.

On March 30, 1984, U.S. Steel, approximately one month beyond the appeal period, sought leave to intervene in the appeal and filed with the Board a "Notice of Intervention". The notice did not indicate a reason for its intervention; nor was a specific challenge made to the assessment.

A hearing was scheduled before the Board for October 24, 1984. However, in the interim the Taxing Authorities, upon their independent evaluation, determined that the property was properly assessed, and therefore elected to withdraw their appeal. This fact notwithstanding, U.S. Steel notified the Board that it intended to proceed to the hearing and seek a reduction in the assessment.

The hearing was held, as scheduled, with only U.S. Steel in attendance. Shortly thereafter the Board rendered a Disposition of Appeal from the assessment, and issued a downward revision from the original assessment of $335,-500.00 to an adjusted amount of $162,500.00.

An appeal from this action was taken by the Taxing Authorities to the Court of Common Pleas of Allegheny County. That appeal challenged the propriety of the Board's jurisdiction to entertain the claim of U.S. Steel

given the fact that they, as original appellants, had elected to voluntarily withdraw their appeal. In response U.S. Steel contended that once intervention was allowed the intervenor assumed the status of a proper party, with all attendant rights and liabilities; consequently, it was entitled to proceed with the appeal to seek a reduction in the assessment.

Following a conciliation conference on June 20, 1985, and submission of briefs by both sides, the lower court agreed with the Taxing Authorities, and held that the Board did not properly have jurisdiction once the original appellants withdrew their appeal. The court thereupon ordered reinstatement of the original assessment of $335,500.00.

On appeal the Commonwealth Court reversed this order and held that U.S. Steel did not lose its status as a party upon the withdrawal of the original appellants, 103 Pa. Cmwlth. 121, 519 A.2d 1090 (1987). Consequently, the Board's revised assessment of $162,500.00 was reinstated. From this order the Taxing Authorities sought allowance of appeal, which was granted. For the reasons that follow we now affirm.

The primary issue in this case is whether an intervenor's ability to participate in the litigation of an appeal is dependent upon the status of the original appellant.

▇▇▇ Intervention is a procedural tool by which a person not originally a party can participate in a given action. *See Goodrich–Amram* 2d § 2327.1. Generally, once intervention is allowed the intervenor is afforded all the rights of a party to the action, *Taged, Inc. v. Zoning Board of Adjustment*, 6 Pa.Cmwlth. 331, 295 A.2d 339 (1972); Pa.R.Civ.P. 2230,[1] and unless otherwise specified an intervenor's right to participate in an appeal is not contingent upon the continued participation of the original appellant. *See generally Schaeffer v. Jones*, 293 Pa. 529, 143 A. 197 (1928)

---

1. Our reference here to the rules of civil procedure are by way of analogy only. They are not controlling since the instant appeal fell within the scope of the Board's local rules on intervention.

(intervening party permitted to file appeal separate from original plaintiff).

■ In this case the Board's intervention rule explicitly provided that any party having a direct pecuniary interest may intervene in an existing appeal "as a party" by giving written notice to the Board of this intention.[2] Given the absence of limitations to the contrary we construe this language to mean that an intervenor participates in the appeal with all the attendant rights of any other party. Therefore, according to the Board's rules, U.S. Steel entered the fray with the same rights as the original appellants, and its ability to continue was not contingent upon the status of any other party. *See Taged, Inc. v. Zoning Board of Adjustment, supra; see also, City of McKeesport v. Fullard,* 26 Pa.Cmwlth. 393, 398 n. 7, 364 A.2d 739, 742 n. 7 (1976).

■ Our inquiry however is not at an end, for we must still address whether the Board was empowered to rule upon the complaint asserted by U.S. Steel. Regarding this issue appellant argues that because of the well settled doctrine that the intervenor takes the litigation as he finds it, *Tremont Township School District v. Western Anthracite Coal Co.,* 381 Pa. 276, 113 A.2d 234 (1955),[3] and the rule that an intervenor must raise claims in subordination to and in recognition of the propriety of the original action, *Bannard v. New York State Natural Gas Corp.,* 404 Pa. 269, 172 A.2d 306 (1961), an intervenor cannot raise issues which were previously waived. Appellant further argues that the intervenor in this case, by failing to file its own appeal,

---

**2.** Rule V of the Board's rules and regulations pertaining to intervention at the time of this appeal reads as follows:

Section 1. Form and Contents.—After any appeal has been filed, any person having a direct pecuniary interest in the real estate assessed and in the assessment complained of, the County or any municipality or school district in which the property is located, may intervene in the appeal *as a party* by filing a notice thereof by referencing on the appeal a representative upon whom notice may be given. (Emphasis added).

**3.** *See Pa. Coal Mining Ass'n v. Department of Environmental Resources,* 498 Pa. 1, 444 A.2d 637 (1982).

waived the issue upon which it ultimately prevailed, i.e., that the property was overassessed; and that, regardless of the intervenor's status as a party, it did not have standing to raise that issue.

This argument has some surface appeal, and if we were presented with a judicial case where the normal rules of waiver apply,[4] we would be inclined to accept it. However, under the unique facts of this case, where we are ruling on the intervention practices relative to an administrative proceeding, we must refer to the controlling administrative rules, as well as the enabling legislation, to determine what if anything was waived at the time this intervenor was admitted to participate in the appeal.

■ Once an appeal has been lodged by either the original appellant or an intervening party, the Board is authorized by statute to determine the assessment pursuant to statutory guidelines. Assessments in counties of the second class are treated in our statutes at 72 P.S. § 5452.1 *et seq.*[5] The Board is empowered, at this juncture, to revise an assessment of property according to the following relevant provisions of section 5452.10:

(a) The board shall, as provided by this act and by the provisions of existing law, examine and revise the assessments and valuations, increasing or decreasing the same as in their judgment may seem proper, and shall add thereto such property or subjects of taxation as may have been omitted.

. . . .

(c) In any appeal of an assessment the board shall make the following determinations:

(1) The current market value for the tax year in question.

(2) The common level ratio.[6]

4. *See Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

5. Act of June 21, 1939, P.L. 626, § 1 *as amended.*

6. The statute provides that " 'Common level ratio' shall mean the ratio of assessed value to current market value used generally in the county

(d) The board, after determining the current market value of the property for the tax year in question, shall then apply the established predetermined ratio [7] to such value unless the common level ratio varies by more than fifteen percent (15%) from the established predetermined ratio, in which case the board shall apply the common level ratio to the current market value of the property for the tax year in question.

72 P.S. § 5452.10.

■ It is apparent from the above provisions that the Board's jurisdiction is not limited by the complaint asserted in the original appeal, as the Taxing Authorities would have us hold. To the contrary, the language suggests that there is no limitation on the Board's power to increase or decrease the assessment, so long as it is within the confines of the statute. Thus, the proceeding before the Board is in the nature of a *de novo* hearing, with the Board having the latitude to revise the assessment upwards or downwards.

■ Thus, even though U.S. Steel did not raise specifically the issue of overassessment, the Board by virtue of the original appeal filed by the Taxing Authorities, was empowered to conduct a *de novo* review of the assessment. Therefore, the claim of U.S. Steel was cognizable.

Finally, we note that by its decision to proceed with the scheduled hearing, the Board interpreted its own rules to allow U.S. Steel to proceed regardless of the action of the Taxing Authorities.

This Court has stated in the past that "our courts must proceed with caution where the judgment of an administrative body properly interpreting its own regulation is at issue." *Norfolk and Western Railway v. Pennsylvania P.U.C.*, 489 Pa. 109, 413 A.2d 1037 (1980) (quoting *Com-*

as last determined by the State Tax Equalization Board pursuant to the act of June 27, 1947 (P.L. 1046, No. 477), referred to as the State Tax Equalization Board Law." (footnotes omitted), 72 P.S. § 5452.1a.

7. The statute provides that " 'Established predetermined ratio' shall mean the ratio of assessed value to market value established by the Board of Property Assessment, Appeals and Review and uniformly applied in determining assessed value in any year." 72 P.S. § 5452.1a.

*monwealth v. Beck Electric Construction, Inc.,* 485 Pa. 604, 614, 403 A.2d 553, 558 (1979)). Recently, we stated that in such a case "the reviewing court's inquiry is (1) whether the agency's interpretation is consistent with the regulation and (2) whether the regulation is consistent with the statute under which it is promulgated." *Pelton v. Commonwealth, Department of Public Welfare,* 514 Pa. 323, 330, 523 A.2d 1104, 1107 (1987).

Boards of this nature are created by the General Assembly to "more efficiently and equitably assess and value persons, property and subjects of taxation for county purposes...." 72 P.S. § 5452.1. In keeping with this expressed purpose, the statute further provides that the Board shall "revise and equalize all such assessments and valuations." 72 P.S. § 5452.4(b). The clear statutory purpose of the Board, as evidenced by this enabling language, is to insure that the assessments made are both accurate and equitable.

By allowing U.S. Steel to intervene and proffer evidence establishing the true market value of the property the Board was fulfilling its responsibilities under the statute, and the Board's liberal application of its rules was consistent with its statutory purpose.

 In conclusion, when a party chooses to appeal under our rules of civil procedure they choose the issues, and what is not chosen is waived. We cannot and do not construe an appeal as a challenge to all possible issues; we confine ourselves to what the parties choose and only that. *See generally* Pa.R.Civ.P. 227.1. Our rules, however, are not necessarily the rules for an administrative tribunal. The difference is that since an appeal to an administrative agency is an appeal to its restricted jurisdiction, the agency has power over a limited area.

In the instant case the Board's power is to determine the propriety of a tax assessment, and the exercise of that limited power is inherent in them. An appeal invokes that power and the tax assessment may go up or down as justice requires. The appellants here invoked that power and

under the agency's rules the intervenor was allowed the same right of challenge. The agency then invited the intervenor to challenge the propriety of assessment as that was the only issue before it.

The Board might have other rules, but it does not. We oversee the propriety of the rules, but we do not make them. The Board may do all that it is allowed to do by constitution and statute, and there is no reason in justice why it may not give a real party in interest access to their jurisdiction on whatever designation he is named.

Accordingly, for the foregoing reasons, we are constrained to affirm the order of the Commonwealth Court.[8]

PAPADAKOS, J., files a dissenting opinion.

PAPADAKOS, Justice, dissenting.

Although I agree with the majority's conclusion that a real property owner has the right to intervene in the appeal of the property assessment taken by a taxing body, even though such intervention comes *after* the expiration of such property owner's allotted time within which to appeal, I must disagree with the majority in granting to the property owner a second bite at the apple after it has accepted the first bite as final.

When the property owner failed to appeal the assessment of $335,000 within the time allowed, even though appeals were pending to attack the assessment as too low, it conclusively accepted the assessment as fair and reasonable. Its subsequent intervention could only be condoned for the purposes of *protecting* the assessment from being increased. Where the taxing body timely withdrew its appeal, there was no proceeding left in which the property

8. We acknowledge that there are certain policy arguments in favor of appellants' position; and that our decision today effectively gives a second chance to a party which failed to exercise its original appeal right. However, given the broad language contained in the Board's administrative rules, as well as the statutory grant of review, which is in the nature of a *de novo* review, we are unable to accept their position.

owner could intervene and the matter should have ended there.

The majority pays lip service to the doctrine of waiver and the rules of intervention and then totally ignores them in relying upon the Board's own administrative rules which *do not deal with waiver.*

I do not subscribe to the view that administrative agencies are sometimes free to exercise an unlimited or absolute discretion. They are not. They must exercise *sound* discretion. See, *Petition of Acchione,* 425 Pa. 23, 227 A.2d 816 (1967); *Eways v. Reading Parking Authority,* 385 Pa. 592, 124 A.2d 92 (1956); *Blumenschein v. Housing Authority of Pittsburgh,* 379 Pa. 566, 109 A.2d 331, *appeal dismissed,* 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1954); R. Berger, "Administrative Arbitrariness: A Synthesis," 78 Yale L.J. 965 (1969). Where their own rules are unclear or non-existent, they are not free to ignore the conventional principles and doctrines of civil practice and procedure. Failure to apply the commonly understood doctrine of waiver in the context of intervention here was a flagrant abuse of discretion in my view. Administrative agencies should be encouraged to conform their adjudicative practices as much as is practicable, to those used by courts throughout the Commonwealth. Our governing principles and procedures are the product of centuries of learning and experience. See, *Philadelphia Electric Co. v. Public Service Comm.,* 314 Pa. 207, 171 A. 690 (1934). To encourage the opposite is mischievous.

Under our Civil Procedure Rules, Pa.R.C.P. 2326–2330, and under 1 Pa. Code § 35.28, dealing with intervention in administrative proceedings, intervention may sometimes be a matter of right, but the court or agency retains a good deal of discretion. Under the standards routinely applied under the Civil Procedure Rules, not to dismiss the real property owner's suit on the basis of waiver under these circumstances was clearly error. For the Board not to do so was a clear abuse of discretion.

I dissent.