# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

North Coventry Township     :
                                :
      v.                   :    No. 1073 C.D. 2019
                                  :    Submitted: November 12, 2020
Josephine Tripodi, et al.,     :
             Appellants   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE J. ANDREW CROMPTON, Judge (P)

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON             FILED: March 9, 2021

Before this Court is the appeal of Josephine Tripodi (Tripodi or, alternatively, Tripodis)[1] from the July 9, 2019 orders (individually, Order or, collectively, Orders)[2]

---

[1] The caption of this case, over time, including before this Court, has, alternatively, reflected one appellant, Josephine Tripodi, and at other times read "Josephine Tripodi, et al.," as it does currently, apparently reflecting the participation of Ms. Tripodi along with her daughter Geri Carr Tripodi, who intervened in this matter in 2009. The caption of the Order at issue in the matter *sub judice* identifies Josephine M. Tripodi and Geri Carr Tripodi as Defendants.

[2] The trial court issued three Orders dated July 9, 2019.

In the first [O]rder, the trial court merely indicates that the court is issuing the [O]rder and a contemporaneous [O]rder because a fund needs to be established for payment of inspection fees, remediation, and costs. The [O]rder indicates that failure to comply with the [O]rder may result in the [Kline Place Apartments] [(]Property[)] being sold and/or a finding of contempt. The second [O]rder denies what is characterized as Appellant Josephine Tripodi's "Motion for New Trial/Hearing." This [O]rder specifically states "an appeal from this Order will be considered interlocutory and will not divest [the trial court] of jurisdiction." The third [O]rder is more detailed, and it directs [the Tripodis] to deliver to an appointed Master [(Master)] either []: 1) [a] $500,000 check; or 2) personal financial information . . . . The Order directs how the $500,000 is to be used by the Master including the payment of [a] judgment of $34,093.65 in favor of [North Coventry] Township [(Township)], [a] judgment of

of the Chester County Court of Common Pleas (trial court), establishing a fund to inspect and remediate Tripodi's property (Property), and pay costs and fees and stating that failure to comply may result in the sale of the Property and/or a finding of contempt against the Tripodis.

## I.      Background

Tripodi owns Kline Place Apartments (Property), which is located within North Coventry Township (Township). On November 14, 2007, the Township filed an action in the trial court seeking relief relative to Tripodi's non-compliance with the Township's property maintenance, plumbing, and electrical codes at the Property. The litigation in this matter has been ongoing from 2007 through the present, including multiple appeals to this Court.[3] In February 2009, the parties reached an agreement, in which Tripodi agreed to sell the Property to her daughter, Geri Carr Tripodi.[4] *See N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 851 C.D. 2017, filed June 4, 2018), slip op. at 2.  In a June 12, 2009 order, the trial court approved the parties' stipulation and approved the request that Geri Carr Tripodi be joined as a party defendant to the litigation.

---

$61,803.75 in favor of the Master, and a second judgment of $37,091.25 in favor of the Master.  The rest of the [O]rder indicates how the remaining money is to be utilized. If [the Tripodis] decide to provide financial information to the Master rather than make the $500,000 deposit, the [O]rder indicates what information must be submitted to the Master.

*N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 1073 C.D. 2019, filed Aug. 17, 2020), slip op. at 2.

[3] *See N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 1214 C.D. 2010, filed Mar. 24, 2011); *N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 2075 C.D. 2010, filed June 15, 2011); *N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., Nos. 831, 832 C.D. 2012, filed Feb. 20, 2013); *N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 851 C.D. 2017, filed June 4, 2018).  The background information in the present opinion is gleaned, substantially, from these earlier opinions of this Court.

[4] The record does not reveal whether this sale actually occurred.

On July 9, 2019, the trial court issued the Orders that are currently before us on appeal. As noted above, the most detailed of the three, and the one that is the primary focus in the present matter, is the Order requiring that the Tripodis deliver a check in the amount of $500,000 to John A. Koury Jr., Esquire, the trial court's appointed master (Master), or, alternatively, to provide personal financial information to him. Reproduced Record (R.R.) at 12-18.[5]

The aforementioned Order, at its essence, states that the Master shall use the $500,000, for full payment, in favor of the Township against the Tripodis, jointly and severally, in the amounts of $34,093.65 and of $61,803.75, per paragraphs 4 and 5 of the trial court's April 25, 2017 order.[6] In addition, $37,091.25 is to be used for matters contemplated under paragraph 4 of the present Order.[7] The remainder of the $500,000 balance is to be deposited into an IOLTA[8] account to be used for payment of invoices submitted to the Master by consultants, contractors, and others for completion of inspection and review of all buildings, dwelling units, and other areas of the Property

---

[5] Pa.R.A.P. 2173 states, in pertinent part, as follows:

[e]xcept as provided in Rule 2174 (tables of contents and citations), the pages of briefs, the reproduced record and any supplemental reproduced record shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc., and followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b, etc.

We note that the reproduced record, herein, does not follow the above rule.

[6] Paragraph 4 of this order addressed costs incurred by the Master for his services from September 1, 2009, through May 14, 2010, and from June 2, 2010, through August 25, 2016. Paragraph 5 of the order addressed attorney's fees and costs incurred by the Township in litigating this case. R.R. at 21.

[7] This latter amount was ordered as payment for fees and services of the Master from the period August 12, 2016, through June 7, 2019.

[8] "IOLTA" is an acronym for "Interest on Lawyer Trust Accounts."

3

to determine whether they are contaminated by mold. In addition, the trial court ordered these funds be used for the remediation of mold, in order to permit a full building and maintenance code inspection, and for necessary corrections to bring the Property into compliance. Beyond that, the funds were established to be used to obtain an appraisal of the Property to determine its fair market value and for payment of other expenses as the trial court might from time to time direct. Further, the Order directs the Master to provide an interim accounting of the amounts he expends, and, upon a final accounting, to distribute any unpaid balance to the Tripodis, unless otherwise directed by the trial court.

In addition, the trial court's Order provides that, if the Tripodis choose to provide their personal financial information to the Master, instead of a check for $500,000, the information they provide will be utilized to determine their financial ability, both individually and together, to obtain and post sufficient personal funds to make the payments addressed in the Order and/or for such other purposes as the trial court directs. In addition, the Order requires the Tripodis to be present at the Property as requested by the Master, but only at times designated by him, and, otherwise, not to be present at the Property when any inspections, review, remediation, correction, and/or appraisal activities are occurring.

Tripodi now appeals to this Court.[9]

---

[9] To the extent the issues this Court is asked to address are solely questions of law, the standard of review is *de novo* and the scope of review is plenary, as this Court may review the entire record in making its decision. *Probst v. Dep't of Transp.*, *Bureau of Driver Licensing*, 849 A.2d 1135 (Pa. 2004). To the extent Tripodi asserts that the trial court abused its discretion, we note that "an abuse of discretion occurs where the trial court 'reaches a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will.'" *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019) (quoting *Com. v. Wright*, 78 A.3d 1070, 1080 (Pa. 2013)). "To the degree the issue of whether the law has been misapplied involves a purely legal question, it is reviewed *de novo*." *Id*. at 314.

4

## II.     Arguments

## A.     Tripodi's Arguments

Tripodi raises two primary questions on appeal:  (1) "Did the [trial court] abuse its discretion in ordering [the Tripodis] to pay $500,000 to fund the alleged mold remediation of the subject [P]roperty owned by Josephine Tripodi?" and (2) "Did the [trial court] misapply governing law and abuse its discretion in ordering Geri Carr Tripodi to comply with the orders . . . when she does not own the [P]roperty and has no interest in it?"  Tripodi's Am. Br. at 3.

Tripodi states:

> The [Orders] were entered after a June 7, 2019 hearing before [the trial court] revolving around [the] Master's claim that 12 of 27 units at the [P]roperty are "contaminated with mold" and the Township's and [the] Master's demands for payments from [the Tripodis].  The Master advised the judge that the estimate for "damages" was $160,000, then demanded $350,000; then [the trial court] ordered [the Tripodis] to pay even more than that - $500,000 – within 60 days of the [Orders] . . . .

Tripodi's Am. Br. at 6.  Additionally, and as we noted above, the trial court ordered that, in lieu of a check for $500,000 payable to the Master, the Tripodis could each supply their personal financial information to the Master.

Tripodi argues that the trial court cited no legal standards for its Orders and that, in fact, there is no federal law covering a property owner's responsibilities relative to mold.  Tripodi states that "[n]either the United States, the Commonwealth of Pennsylvania, nor Chester County have laws, codes, or regulations governing mold," and because no state or federal law requires a property owner to inspect for mold or to remediate it, the trial court's requirement that the Tripodis pay $500,000 to perform same, is "a reversible abuse of discretion."  Tripodi's Am. Br. at 20-21.  Tripodi further argues that the trial court conflated prior orders and code violations at issue in the case

5

with the present matter involving mold issues and that the prior violations and orders were not grounds for compelling the Tripodis to pay $500,000.

Tripodi states that the prior order in the case, *i.e.*, the order issued on April 25, 2017, entered judgment in favor of the Master in the amount of $61,803.75, and entered judgment in favor of the Township for $34,093.65 for attorney's fees and costs. In addition, the April 25, 2017 order authorized the Township to spend up to $10,000 from an escrow account of $15,000 to hire an engineer to conduct a full building and maintenance code inspection and to review all buildings/apartments that are part of the Property. The April 2017 order also authorized the Township to use and expend up to $5,000 from the escrow fund to engage a real estate appraiser to determine the fair market value of the Property. In addition, the April 2017 order directed the Tripodis to make the Property available for inspections by the engineer, the real estate appraiser, township representatives, and the Master, and directed the Master to issue a report after reviewing the engineer's and appraiser's reports. Tripodi asserts that the April 2017 order did not address the issue of mold, and that it was an insufficient basis for the trial court to compel the Tripodis to make payment for mold inspection and remediation and did "not come anywhere near the . . . $500,000 that [the trial court] . . . demanded of [the Tripodis] via [its] July 7, 2009 Orders under review . . . in this appeal." Tripodi's Am. Br. at 22-24.

Tripodi argues that it is the Master, rather than she and/or her daughter, who is responsible for the growth of mold at the Property, as the Master was in charge of inspections of, and access to, the Property since his appointment in 2009, and he failed to maintain the Property. Thus, Tripodi asserts that the growth of mold was the fault of the Master and the Township because they were the ones that had control over the Property. Tripodi's Am. Br. at 24. In addition, Tripodi asserts that there were no detailed cost estimates of mold remediation from the Master to the trial court, the

6

Master's reports were "vague and incomplete" and failed to "detail the mold alleged to be contained within each townhouse at the [P]roperty," and the trial court failed to assess Josephine Tripodi's ability to pay the $500,000 as ordered. Tripodi's Am. Br. at 25.

Furthermore, Tripodi contends that the trial court abused its discretion and committed an error of law by imposing requirements on "non-owner, Geri Carr Tripodi." *Id*. Tripodi maintains that "Geri Carr Tripodi does not own the [Property] and has no interest in it. Geri appeared in the litigation below because, in 2009, Geri was the prospective purchaser for the [Property]. But this sale never occurred. Geri does not own the [Property] and has no interest in it." *Id*. Further, "[t]here is no state or federal law that provides that a non-owner should be made responsible for property maintenance or like obligations or, in this case, responsible 'equally' with the property owner for paying the . . . $500,000 that [the trial court] ordered below." Tripodi's Am. Br. at 26. Tripodi requests that this Court vacate the Orders of the trial court entered against her/them.

### B. The Township's Arguments

The Township succinctly argues that Tripodi offered no defense for failing to comply with the trial court's Order and, thus, the appeal should be denied.

### III. Discussion

Briefly, to recap, the primary arguments of substance put forward by Tripodi are that it was inappropriate for the trial court to require $500,000 be deposited in a fund for repairs, when the Master determined that, at most, $350,000 would be necessary, and there is no requirement in law that mold must be remediated. Further, Tripodi contends that, in fact, the existence of mold is a result of the Master's failure(s) over time. In addition, Tripodi asserts that Geri Carr Tripodi should not have been treated as if she is an owner of the Property and made subject to any of the

7

requirements placed upon her mother. We address the issues raised by Tripodi in reverse order.

To the extent Tripodi, and/or the Tripodis, argue that Geri Carr Tripodi is not an owner of the Property, and, thus, should not be held to any of the requirements of the true owner, Josephine Tripodi, we find this argument unconvincing. Geri Carr Tripodi sought to intervene in this litigation many years ago and was joined as a party defendant in June 2009. As the Pennsylvania Rules of Civil Procedure make plain: "After the entry of an order allowing intervention, **the intervener shall have all the** rights and **liabilities of a party** to the action." Pa.R.C.P. No. 2330 (emphasis added). Further, as our Supreme Court enunciated in *In re Appeal of the Municipality of Penn Hills*, 546 A.2d 50, 52 (Pa. 1988): "Given the absence of limitations to the contrary . . . an intervenor participates in the appeal with all the attendant rights of any other party."

Geri Carr Tripodi chose to intervene in the present matter in 2009. She cannot now assert she is a mere representative or observer or that she can move in and out of the litigation at will. Further, to suggest that Geri Carr Tripodi has no interest in the Property seems disingenuous in light of the fact that, at one time, the parties had agreed Geri Carr Tripodi would purchase the Property from her mother. Ironically, the very financial statements to which the Tripodis object would establish whether, in fact, Geri Carr Tripodi has an interest in the Property. Accordingly, we reject the argument that Geri Carr Tripodi cannot be held accountable in the same way Tripodi may be. Thus, the trial court did not err by determining Geri Carr Tripodi may be subject to the same requirements as her mother in this matter, including the provision of financial statements.

Next, we address Tripodi's contention that the trial court abused its discretion when it ordered the payment of $500,000 to create a fund to inspect and remediate the

8

Property of mold, to pay the Master, and to offset other necessary expenses as directed by the trial court. In this Court's April 2, 2020 Memorandum and Order, we stated:

> [i]n its July 9, 2019 Order, the trial court ruled that the Tripodis could make a $500,000.00 payment **or** provide personal financial information to determine the Tripodis' financial ability to provide the $500,000.00 check . . . . The Tripodis' counsel offered no reason for not submitting financial information rather than making the $500,000.00 payment . . . . The Tripodis had the option to provide the ordered financial information but chose not to do so.

*N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 1073 C.D. 2019, filed Apr. 2, 2020), slip op. at 4 (emphasis in original).

Initially, we review whether the trial court abused its discretion or committed an error of law when it required the Tripodis to remediate mold at the Property. While it may be true, as the Tripodis assert, that no law requires mold remediation, the purpose of the mold remediation is to make it safe enough for the inspectors to enter the premises to determine the extent of the code violations. Thus, without mold remediation, nothing further can occur. Accordingly, we see no error in the trial court's determination that the Tripodis must fund mold remediation as a precursor to meeting the other requirements for which they are responsible under the Orders.

In other circumstances, we might be skeptical of the trial court affixing a sum to be escrowed, in the absence of more specific information about the cost of remediation. However, we reiterate here, the Tripodis were given the alternative of providing the Master with their financial documentation, in lieu of the $500,000. Thus, paying the $500,000 was not the only option available to them. Further, given the Tripodis' failure to comply, their dilatory tactics to date, including multiple changes in legal representation over the lifetime of the litigation in this matter, and the unknown extent of the mold damage to the Property, along with the uncertainty

of the costs associated with inspection, remediation, and bringing the Property up to code, we do not think it was unreasonable for the trial court to set the escrowed amount at $500,000 in this particular case. This is especially true where the passage of time, in and of itself, very likely has added, and may continue to add, to the deteriorating condition of the Property, and where safety concerns make an accurate assessment of that condition difficult to obtain. We note here that there should be no confusion that the $500,000 is entirely for mold remediation, when indeed that is not the case, despite some obfuscation of the issue in Tripodi's arguments to this Court as stated above. A significant portion of the $500,000 total set by the trial court is to cover costs already incurred and for additional costs that will be incurred to bring the Property up to code requirements. Any costs for mold remediation will represent only a portion of the overall total costs. Further, we note that we see Tripodi's attempt to lay the blame for the development of mold on the Property at the feet of the Master as disingenuous where there has been an ongoing lack of cooperation by the Tripodis with the Master's and the Township's collective efforts to bring the Property into compliance over the past 14 years.

The trial court clearly recognizes it is not unfettered in its ability to set an appropriate fund amount. This is evidenced by its self-imposed mitigation measures, i.e., (1) allowing the Tripodis an alternative to paying the $500,000, (2) making it explicit that the fund is to be placed in an IOLTA account, subject to accounting by the Master, and (3) directing any unexpended funds from the $500,000 be returned to the Tripodis, once the Property is brought into compliance. Similar to our Superior Court's view in determining the equitable distribution of property in divorce matters, we believe that "a trial court has broad discretion" in fixing the amount which must be set aside to effectuate justice. *See Dalrymple v. Kilishek*, 920 A.2d 1275, 1280 (Pa. Super. 2007). Thus, we see no error or abuse of discretion

10

by the trial court in the present instance.

## IV. Conclusion

Based on the foregoing, we affirm the July 9, 2019 Orders of the trial court.


_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

North Coventry Township      :
     :
     v.      :    No. 1073 C.D. 2019
     :
Josephine Tripodi, et al.,      :
           Appellants      :

## **O R D E R**

**AND NOW**, this 9th day of March 2021, the July 9, 2019 Orders of the Chester County Court of Common Pleas are **AFFIRMED**.

_____
J. ANDREW CROMPTON, Judge