NEWPORT NEWS SHIPBUILDING
AND DRYDOCK COMPANY,
Appellee,

v.

PENINSULA SHIPBUILDERS' ASSOCI-
ATION and Robert Bryant and E. T.
Adcock, III; H. L. Arthur, III; W. R.
Askew; F. P. Atwell; R. D. Bailey; J.
Banks, III; H. Bates; L. Benbow; G. E.
Benton; B. K. Blackburn; M. L. Blout;
S. B. Blow; J. Blowe; O. F. Bowser; K.
A. Brown; O. I. Brown, Jr.; C. K. Bruso;
G. Burdick, III; W. J. Caddies; R. D.
Carey, Jr.; L. Castello; R. H. Christian;
E. N. Church; J. J. Cochran; W. W.
Collins; M. H. Conway; D. L. Cooper;
E. J. Coston; S. R. Crockett, Jr.; C. D.
Dale; K. R. Daniels; S. W. Davis; I. W.
Dillard; J. B. Dixon; F. O. Dodson; U.
Dove; T. C. Duncan; M. J. Eberhard; L.
D. Elliott; P. M. Ellis; T. E. Esbaugh;
M. D. Fischer; D. E. Franklin; V. P.
Gales; R. L. Gall; J. M. Gardner; D. A.
Garrett, III; D. L. Garrett; J. E. Gar-
rett; L. J. George; H. B. Godfrey; C. E.
Gray; H. N. Green; M. D. Hadden; S. D.
Hammer; R. L. Harris; D. R. Hayes; L.
Henderson; S. B. Henry; M. G. Hodges;
R. Hogge; G. W. Holloway; S. Holmes,
Jr.; J. Hooker; C. W. Hornberger; G.
Hudson; J. R. Hunt; B. J. Jackson; J.
S. Jarell; J. T. Jennings; W. E. Jobst;
R. Jones; S. W. Jones; L. S. Khoury; R.
L. Knight; P. M. Koler; M. A. Kraus;
N. Lee; J. L. Lewis; N. D. Loomer; J.
W. Mahaney; J. R. Manis; L. V. Mann;
D. S. Marshall; E. A. Mason; D. A.
Merilic; C. Mills; L. T. Moore; W. B.
Mounger; D. O. Mundon; C. L. Mur-
dock; E. L. Neel; C. M. Odom; P. G.
Pair; C. G. Parker; J. E. Parker, Jr.; H.
R. Payne; J. C. Person; C. S. Pierce; D.
B. Polston; A. L. Pollard; G. J. Pulley;
N. A. Redcross; R. I. Richardson; C. M.
Riddick; W. J. Riddick; F. A. Roach,
Jr.; L. Robertson, Jr.; W. R. Robinson;
L. L. Rodgers; D. F. Samuels; R. P.
Sharp, Jr.; H. B. Shaw; J. C. Simmons;
R. L. Simpson; W. C. Singleton; J. E.
Smith; S. E. Stanley; C. W. Stump, Jr.;
C. N. Suber; H. D. Taplin; C. W. Thar-
rington, Jr.; H. R. Thomas; W. Thomas;
N. M. Thompson; J. R. Tillie; G. R.
Turner; B. V. Umberger; G. L. Umber-
ger; H. W. Upchurch; L. E. Vance; E.
W. Walker, Jr.; J. O. Walpole; B. L.
Ward; E. G. Warren; R. F. Waters; D.
R. Watson; S. A. Watson; G. L. Whitak-
er; K. L. White; R. H. White; J. V.
Williams; L. Williams; L. M. Williams;
S. H. Woodard, Jr., Appellees,

and

National Labor Relations Board,
Appellant.

No. 79–1842.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 7, 1980.
Decided April 7, 1981.

Ann McNerney, N. L. R. B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Aileen Armstrong, Asst. Gen. Counsel for Special Litigation, Washington, D. C., on brief), for N. L. R. B.

Peter J. Carre, Washington, D. C. (Chester A. Hurwitz, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., on brief), for Newport News Shipbuilding and Dry Dock Company.

Meryl D. Moore, Newport News, Va. (E. D. David, Jones, Blechman, Woltz & Kelly, P. C., Newport News, Va., on brief), for Peninsula Shipbuilders' Association.

Before WIDENER, PHILLIPS and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Pursuant to Fed.R.Civ.P. 24,[1] the National Labor Relations Board (Board) moved to intervene in a declaratory judgment action

---

1. Fed.R.Civ.P. 24 provides in pertinent part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency ..., the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

brought in district court by Newport News Shipbuilding & Dry Dock Co. (Company) against Peninsula Shipbuilders Association (PSA). The district court permitted the Board to participate as an *amicus curiae* at the hearing, but in its final judgment denied the Board's motion. The Board appeals denial of the motion. We reverse that denial; hold that the Board had a right to intervene under Fed.R.Civ.P. 24(a)(2); and remand to the district court to allow the Board to intervene for the sole purpose of prosecuting an appeal from the district court's final decision.

## I

In 1975, the Company and the PSA entered into a collective bargaining agreement covering the Company's approximately 19,000 production and maintenance employees. By its terms, the agreement was effective until June 30, 1978, unless extended by contract. It was so extended and remained in effect until October 28, 1978, when the PSA was replaced as bargaining agent by the United Steelworkers of America (Steelworkers). Steelworkers had launched its organizing campaign in late 1977. In January 1978, a representation election was held between the PSA and the Steelworkers. The outcome was disputed, but the Board certified the Steelworkers on October 28, 1978.[2]

Between the election and certification dates, the Company recognized the PSA as the employees' bargaining representative. Accordingly, it continued to check off PSA dues from the payroll checks of employees who had authorized such deductions under section 23.1 of the collective bargaining agreement.[3] During that same time, the Steelworkers distributed to the employees form letters which requested the Company to terminate the check-off of dues. The

Company received 214 such letters. At first, the Company informed the PSA that it would honor these check-off revocations, but the PSA threatened to sue the Company for violating section 23.2 of the collective bargaining agreement because the revocations were not on PSA forms. Section 23.2 provides as follows:

*Revocation of Check Off Authorization.* (a) Any such dues check off authorization shall not be for a period of time greater than one year or the termination date of this Agreement, whichever is the sooner. A revocation of such authorization shall be by use of the form furnished by the Association (in duplicate) and shall be delivered either to the Association or to the head of the Company's Personnel and Industrial Relations Division. If such revocation is to be effective upon the termination date of this Agreement, it shall be delivered within the last fifteen (15) days of the term of this Agreement.

(b) The above-mentioned authorization, the receipt and notice of cancellation shall be in form and substance satisfactory to the Company.

Subsequently, the Company informed the 214 employees that it would not discontinue their dues check-off. The PSA sent the 214 employees certified letters informing them that only check-off revocations on forms furnished by the PSA could be used under the terms of the collective bargaining agreement. Fifty-six employees eventually requested check-off revocations on PSA forms and the Company complied. All dues check-offs were terminated when the agreement ceased on October 28, 1978.

Just before the PSA contract expired, the Steelworkers filed unfair labor practice charges with the Board, alleging that the Company was violating subsections 8(a)(1) and 8(a)(3) and the PSA was violating sub-

---

**2.** In late 1979, this court ruled that the Steelworkers had won the election. *Newport News Shipbuilding & Dry Dock Co. v. NLRB,* 608 F.2d 108 (4th Cir. 1979).

**3.** *Section 23.1. Check Off and Transmittal.* Upon the written individual and voluntary authorization in accordance with law of an employee who is a member of the Associa-

tion, and in no way as a condition of employment, the Company will make payroll deduction of the required monthly dues (uniform in amount) of the Association in accordance with the said authorization. The Company will deliver the sums so deducted to the Association, upon its written receipt therefor.

sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. § 158 (1976) (Act), by continuing to check off the dues of employees who purportedly revoked on non-PSA forms. In response, the Board informed the Company that it had found a prima facie violation by the Company, but orally advised that the Board intended to dismiss the charge against the PSA.

The Company then filed this declaratory judgment action in the District Court for the Eastern District of Virginia against the PSA, its business manager, and the 158 employees who attempted to revoke their dues check-offs on non-PSA forms. The action sought a judicial construction of section 23 of the collective bargaining agreement, in particular to determine what procedures were necessary to revoke check-off authorizations, and to determine whether the Company was entitled to indemnification under section 23.3.[4]

While this action was pending in the district court, the Board issued unfair labor practice complaints against the Company and the PSA[5] respectively. One charge in the complaints was that enforcing section 23.2 of the collective bargaining agreement unlawfully interfered with the employees' § 7 rights, 29 U.S.C. § 157 (1976).

With the unfair labor practice proceeding pending, the Board then moved to intervene in and to stay the district court action pending the outcome of the unfair labor practice proceeding. The district court conducted a hearing on the motion to intervene, but deferred ruling while permitting the Board to participate at the hearing as an *amicus curiae*—making arguments, cross-examining witnesses, and filing a brief.

In its final decision, the court denied the Board's motion to intervene and, on the merits gave a declaratory judgment that section 23.2 was valid and binding; that the

Company was accordingly entitled to continue check-offs not revoked on PSA forms; and that the Company was to be indemnified by the PSA under section 23.3. The Board appealed the denial of its motion to intervene. No other appeal was taken by any party to the action.

## II

■ To intervene as a matter of right[6] under Fed.R.Civ.P. 24(a)(2), the moving party must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties. *See Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); 3B *Moore's Federal Practice* ¶ 24.09–1[1], at 24–284 to –285 (1980); 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1908, at 495 (1972). We conclude that under the circumstances of this case, the Board had a right to intervene that was erroneously denied.

The necessary interest of the Board in the subject matter of the action derives generally from its role as the primary tribunal for the adjudication of unfair labor practices, *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), and from its statutory responsibility for preventing, subsection 10(a) of the Act, 29 U.S.C. § 160(a), and remedying, subsection 10(c) of the Act, 29 U.S.C. § 160(c), those practices. Its more specific interest growing out of those statutory responsibilities is obvious upon consideration of the circumstances.

When the Board sought intervention in the declaratory judgment action there was pending before the Board the precise issue

---

4. *Section 23.3. Indemnification.* The Association shall indemnify, defind [*sic*] and hold the Company harmless against any claim or liability arising out of the administration of this Article.

5. The Regional Director initially dismissed the charge against the PSA but, after a successful

appeal by the Steelworkers, he issued a complaint on July 2, 1979.

6. The Board contended alternatively that the district court abused its discretion in denying it permissive intervention under Fed.R.Civ.P. 24(b). In view of our disposition of the appeal, we do not address that alternative.

whether the Company and PSA had committed unfair labor practices by enforcing the very contractual provisions whose interpretation was in issue in the declaratory judgment action. The two proceedings thus involved common issues, central to each, respecting the meaning and legality of these provisions so that there existed a real possibility of inconsistent adjudications on those issues in the two tribunals. As the Board points out, and as the Company and PSA concede, the primary concern of those parties in the declaratory judgment actions—commenced after the filing of unfair labor practice charges—was to fix any ultimate financial liability that might result from the unfair labor practice proceeding. On the Company's part, the purpose was, of course, to gain practical exoneration in advance from any liability that might be imposed upon it in the Board proceeding.

Though we attempt here no prejudgment of the issue, it is obvious that a substantial question of the district court's jurisdiction existed in light of the circumstances surrounding the Board proceeding and the action for declaratory relief. Jurisdiction might turn on whether the district court action could properly be treated as a live controversy respecting the bargaining contract, in which case concurrent jurisdiction might exist. *Smith v. Evening News Association*, 371 U.S. 195, 197–98, 83 S.Ct. 267, 268–69, 9 L.Ed.2d 246 (1962). On the record before the district court, that was at least an arguable legal issue in view of the fact that the dues check-off had then ceased and the contract had expired. A party may not evade the Board's exclusive jurisdiction over unfair labor practice issues by contriving in a court of law an ostensible contract dispute when the true issue is one of an unfair labor practice. *See Association of Street, Electric Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 1920, 29 L.Ed.2d 473 (1971). This was the position sought to be advanced by the Board through intervention. The legitimate interest of the Board in being able in the district court fairly to protect its jurisdictional claims—of exclusive jurisdiction or at least a concurrent jurisdiction entitled by its primacy to deference—is manifest and should have been recognized by the district court.

The next requirement—that the Board might be impeded from protecting its interest by a denial of intervention—is equally well established. Developments in and subsequent to the district court proceeding and readily predictable when intervention was sought, plainly reveal the impediment. As a result of the district court's judgment, the Company and PSA were armed with a final decision—from which no party had appealed—that section 23 of the collective bargaining agreement was valid, that the Company had checked off dues properly, and that PSA must indemnify it. So armed, PSA moved,[7] albeit unsuccessfully, to dismiss the unfair labor practice proceeding because either the district court's findings of fact were res judicata or principles of collateral estoppel barred the proceeding. *Newport News Shipbuilding and Dry Dock Co.*, No. JD–403–80 (July 10, 1980) (unpublished). Even if not entitled to res judicata or collateral estoppel effect in the Board proceeding, the district court judgment (clearly predictable as a possibility when intervention was sought) created for the Board the kind of "practical disadvantage" that has been thought sufficient to warrant intervention of right. *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C.Cir.1967). *See also Atlantis Development Corp. v. United States*, 379 F.2d 818, 826–29 (5th Cir. 1967).

This practical disadvantage or impediment was not significantly relieved by allowing the Board to participate as *amicus* in the district court proceeding. Amicus status did not allow the Board effectively to protect the interests above identified. *See*

---

**7.** The Board represents that the Company declined fully to participate in the unfair labor practice proceeding, standing on its position that PSA must defend and indemnify it. Brief for NLRB at 9, *Newport News Shipbuilding and*

*Dry Dock Co. v. Peninsula Shipbuilders Ass'n*, 646 F.2d 117 (4th Cir. 1981). The record of the unfair labor practice proceeding seems to bear out the fact that PSA there carried the burden.

*Nuesse*, 385 F.2d at 704 n.10. Specifically illustrating this is the fact that the district court refused to consider the Board's attempted argument that the dues check-off procedure violated the Act because, as *amicus*, the Board was deemed to lack "standing" to challenge the contractual provision. App. at 124. More importantly, lacking party status the Board had no right to seek review by appeal of any decision affecting its identified substantive interests.

Finally, it is obvious that the Board's interests in the subject matter of the district court action were not adequately represented by the parties. The burden of establishing this lack of adequate representation is "minimal," *Trbovich v. UMW*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972); *Westinghouse Electric Corp.*, 542 F.2d at 216, and is easily carried here. Obviously the Company and PSA did not represent the Board's interest in respect of the contested contract provisions. The Board's position, clearly advanced in the district court, was that they were violative of the Act. In direct opposition, as the district court stated, the Company and PSA, though aligned as nominal adversaries, joined in asserting that the provisions did "not violate any applicable statute." App. at 124.

Neither were the Board's interests adequately represented by the 158 employees technically joined as defendants. Though joined, the circumstances of their joinder made it highly unlikely that any would make actual appearances to represent any interests shared with the Board. By the time the district court action was commenced, the Steelworkers had replaced the PSA as the employees' bargaining representative. It can be assumed that the employees indeed expected that the Steelworkers would now adequately represent their interests, an expectation presumably held at least from the time the Steelworkers moved in April 1979 to intervene until that motion was finally denied in the final judgment of August, 1979. So far as the record shows, no employee defendants actually appeared *pro se* or by independent counsel in the district court proceeding. Even if they had, they could not be expected adequately to represent the Board's institutional interests in protecting its jurisdiction and processes.

■ We, therefore, conclude that the Board had a right to intervene in order to protect its jurisdiction and processes against the possibility of a district court judgment in conflict with its own in a pending unfair labor practice proceeding.[8] *See Amazon Cotton Mill Co. v. Textile Workers Union*, 167 F.2d 183, 189–90 (4th Cir. 1948). *See generally* Shapiro, *Some Thoughts on Intervention Before Courts, Agencies and Arbitrators*, 81 Harv.L.Rev. 721, 733–36 (1968).

### III

■ All things considered, we further conclude that the Board's interest as intervenor of right may be adequately protected by allowing it—if so disposed—now to prosecute an appeal—as defendant-intervenor—from the district court's final judgment on the merits. While, as earlier noted, its participation as *amicus* in the district court was not completely protective of its interests there, we think the record there developed is sufficient to permit fair consideration of the Board's position on appeal.

■ Even intervention of right may properly be made conditional by the exigencies of the particular case. *See generally* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1922 (1972). Generally speaking, an intervenor is held to take the case as he finds it, *see Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 153 (S.D.Cal. 1954), but to give the Board at least that position here would require wholly vacating the district court proceeding to allow its

---

8. The Board actually—and properly—sought to protect its position and to avoid the prospect of inconsistent adjudication in two ways: by contending for a decision on the merits that would square with its unfair labor practice charges respecting the contract's validity, and by seeking a stay of the district court proceeding in deference to its claim of exclusive or at least primary concurrent jurisdiction to adjudicate the underlying unfair labor practice issue.

participation as a party from the outset of reopened proceedings. We think that would be improvident and not necessary to give adequate protection to the Board's rights as intervenor. These, as indicated, may be adequately served by allowing the Board to have reviewed on appeal the district court's final judgment, including its assumption of jurisdiction and its refusal to stay its proceedings, as well as its decision on the merits of the contract interpretation claim.[9] As to these issues, the Board had an "appealable interest," *see United States v. Imperial Irrigation District*, 559 F.2d 509, 521 (9th Cir. 1977), *rev'd in part, vacated and remanded in part on other grounds sub nom. Bryant v. Yellen*, 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184 (U.S.1980), based upon the district court's rejection of its several contentions as advanced in its motion to intervene and in the course of its participation in the district court proceedings as *amicus curiae.*

Accordingly, we reverse the district court's denial of the Board's motion to intervene. The action is remanded for further proceedings consistent with this opinion. Upon remand, the Board is admitted by intervention as a party defendant for the limited purpose of prosecuting an appeal—if so advised—from the final judgment of the district court. The Board may give notice of appeal within thirty days after issuance of this court's mandate. On appeal the Board may present for review so many of the issues above identified as it sees fit.

*REVERSED AND REMANDED WITH INSTRUCTIONS.*

---

**9.** All these present questions of law on which the Board's position could not be significantly improved by participation as a party in an evidentiary proceeding. The relevant facts are sufficiently developed on the existing record and appear undisputed.