George ENG, Joel Clayman, Ronald West, Martin Spence, John Griffin, Joseph Rivera, Raheem Supreme, Alonzo Starling, Kevin Richardson, Individually and on behalf of all persons similarly situated, Plaintiffs–Appellees,

v.

Thomas A. COUGHLIN, III, Commissioner of Corrections for the State of New York; Arthur Leonardo, Deputy Commissioner of Correctional Services; Donald Selsky, Acting Director of Special Housing, Department of Correctional Services; Harold J. Smith, Superintendent, Attica Correctional Facility; William McAnulty, Deputy Superintendent, Attica Correctional Facility, in their official capacities, Defendants,

v.

NEW YORK STATE INSPECTION, SECURITY AND LAW ENFORCEMENT EMPLOYEES, DISTRICT COUNCIL 82, AFSCME, AFL–CIO, William Stranahan and Donald Dylag, Intervenors–Proposed–Defendants–Appellants.

No. 74, Docket 88–2207.

United States Court of Appeals, Second Circuit.

Argued Oct. 28, 1988.

Decided Jan. 12, 1989.

Anna Marie Richmond, Buffalo, N.Y. (Prisoners' Legal Services of New York, Buffalo, N.Y., David C. Leven, Executive Director, Judith Subjeck Stadler, Timothy E. Jennings, Law Clerk, Edna Y. Torres, Law Clerk, of counsel), for plaintiffs-appellees.

Robert S. Hite, Albany, N.Y. (Rowley, Forrest and O'Donnell, P.C., Albany, N.Y., Brian O'Donnell, Mark T. Walsh, of counsel), for intervenors-proposed-defendants-appellants.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y. (Peter G. Crary, Asst. Atty. Gen. of the State of N.Y., Dept. of Law, of counsel), for defendants.

Before LUMBARD, PRATT and MAHONEY, Circuit Judges.

LUMBARD, Circuit Judge:

This interlocutory appeal, from a partial denial of an application for leave to intervene, is taken by the collective bargaining representative for certain state prison officers and by two of those officers whose superiors are defendants in a class action brought in 1980 by certain inmates at Attica Correctional Facility. The inmates allege that prison authorities and state correctional officials permitted the prison guards to violate many of their constitutional guarantees, including those against cruel and unusual punishment. After they moved for a preliminary injunction directing, *inter alia,* the removal of certain guards from their posts, the guards' collective bargaining representative, District Council 82 of the New York State Inspection, Security and Law Enforcement Employees, AFSCME, AFL–CIO (Council 82), William Stranahan and David Dylag moved to intervene under Rule 24, Fed.R.Civ.P., claiming that the interests of Council 82's members were at stake and inadequately represented in the lawsuit. The District Court for the Western District of New York, Michael A. Telesca, *Judge,* granted the intervenors leave to intervene only to the extent necessary to challenge the discovery by the inmates of the guards' personnel records. The intervenors complain of that limited grant and ask us to consider Judge Telesca's grant of limited intervention as a complete denial of intervention under Rule 24 and to reverse that denial and direct the admission of the intervenors as parties to the proceedings. Because we find that the restricted grant of leave to intervene may be appealed after any final judgment in the underlying action, we dismiss the appeal.

## I.

This is a class action alleging that the defendants, all state correction officials or prison authorities at Attica Correctional Facility in Attica, New York, have systematically violated the constitutional rights of the inmates of Attica's Special Housing Unit (SHU), a segregated and highly restricted disciplinary prison unit. The named plaintiffs are all inmates of New York State prisons who are presently confined in the Attica SHU or have been so confined in the recent past. They sought to have a class certified under Rule 23, Fed.R. Civ.P., consisting of all persons who have been, are presently, or will in the future be, incarcerated in the SHU. The class is large, transitory and its members are difficult to identify precisely, since the Board of Corrections has not made available the identities of all those confined in the SHU during the relevant period. Chief Judge John T. Curtin, then presiding over the case, certified the class on October 19, 1981.

In their second amended class action complaint,[1] filed October 27, 1983, the inmates complain that the conditions under which they are confined are "inhumane, intolerable and are not consistent with concepts of fundamental human decency." They allege violations of their rights to free exercise of religion, to access to the courts and against cruel and unusual punishment, in contravention of the First, Sixth, Eighth and Fourteenth Amendments to the Constitution and the equivalent articles of the New York State Constitution. The inmates also allege that the severity of their confinement deprives them of their Fourteenth Amendment right to due process of law. Finally, they allege violations of the New York State Correction Law and certain state regulations.

Specifically, the complaint enumerates nine separate claims. First, their mates claim that the defendants knowingly allow the prison guards to beat the inmates, causing pain, bodily injury and permanent disabilities. Second, they allege that they are confined for twenty-three hours every day

1. The inmates originally proceeded *pro se,* filing their complaint on May 6, 1980 on a form provided to prisoners under 42 U.S.C. § 1983. On their behalf, the Legal Assistance Program at the State University of New York, Buffalo School of Law, representing the inmates, filed a first amended class action complaint on June 5, 1981. The two years between the filings of the first and second amended class action complaints were spent in class certification proceedings, case consolidation and early discovery.

in windowless steel cells with plexiglass shields covering the fronts of the cells, and are thus deprived of adequate ventilation. Their third claim is that their medical complaints are not handled adequately, that the defendants do not monitor the inmates' health and that the defendants permit an illegal and indifferent health care system to continue. Fourth, the inmates claim that they are confined for twenty-three hours a day for six months at a time, during which periods their one daily hour for "exercise" is spent inadequately clothed in an exercise room that is open to the elements, unheated, uncleaned and unsanitary. Fifth, they allege that the defendants permit the guards to restrict the inmates' food supply or deny food entirely, that the food is served in unsanitary vessels and that no allowance is made for the religious dietary needs of the inmates. Sixth, the inmates complain of generally unsanitary conditions in their cells, with no cleaning supplies available and with hot water provided only to those inmates who can afford to purchase a bucket. Seventh, the inmates allege that the defendants permit the guards to confiscate the inmates' clothing and force them to remain naked in cells without bedding or running water. Eighth, they complain that they are not permitted access to the prison's legal resources and that their right to privileged communications with their attorneys is routinely violated. Finally, they allege that they are deprived of their right to free exercise of religion while incarcerated in the SHU.

In this second amended complaint, the inmates ask the court to declare that their rights are being violated, and they seek an injunction prohibiting the defendants, their agents and their employees from subjecting them to the unlawful and unconstitutional conditions alleged in the complaint.

While discovery was underway, the inmates found that their situation was deteriorating. Specifically, they alleged that the conditions in the SHU and harassment by the prison guards led one Anthony John ("Mike") Dzeilak, a mentally ill inmate of the SHU, to commit suicide on June 3, 1985. The inmates alleged that the correc-

tions officers who work in the SHU were aware of Dzeilak's mental instability and that they deliberately beat him, provoked him and harassed him into taking his own life. On the strength of these events, and upon allegations of a routine of similar deprivation and harassment affecting all of the inmates in the SHU, the inmates moved on September 20, 1985 for a preliminary injunction (1) to order the defendants to remove mentally ill inmates from the SHU; (2) to order the defendants to alter the method by which guards are chosen for the SHU, replacing the existing seniority system with a procedure for screening and training prospective SHU guards; (3) to enjoin defendants and their agents from harassing or causing harm to certain other inmates who the inmates alleged were subject to abuse akin to that of Dzeilak; and (4) to order the defendants to remove from duty in the SHU eight named correction officers, two of whom (Stranahan and Dylag) are now intervenors in the case.

This was the first formal request for relief against specific correction officers. (The inmates have contended throughout these proceedings that the guards' failure to wear their required identification badges makes their identities difficult for them to ascertain.) In response, Council 82, William Stranahan and Donald Dylag, by Order to Show Cause filed October 9, 1985, applied for leave to intervene as of right under Rule 24(a)(2), or, in the alternative, for permissive intervention under Rule 24(b). They argued in their application that their ability to protect their interests may be impeded if the inmates' requested relief is granted. Specifically, they alleged that, if the inmates' preliminary injunction was granted, members of Council 82 would be substantially affected and that protracted proceedings would be necessary to determine the rights of Council 82 members working in the SHU. Additionally, they alleged that the correction officers' privacy rights would be violated if the inmates were permitted discovery of portions of their personnel records.

Joseph Puma, President of Council 82, claimed in his affidavit that the relief de-

manded by the inmates would greatly impair Council 82's members' interests. He alleged that the relief, which includes modifications and alterations in the present methods of discipline, safety and staffing in the SHU, would have a "devastating effect upon the rights secured for members of Council 82 by the collective bargaining agreement" between Council 82 and the state. Puma asserted that the preliminary injunction, if granted, would violate the terms of the collective bargaining agreement in several specific respects: First, requiring the guards assigned to the SHU to be screened and trained would violate the terms of the contract relating to the current seniority-based method of selection of guards for the SHU and the contractual ban against "job bumping" (one employee's passing over another who has higher seniority). Second, a decision by the court to remove certain guards would violate the discipline, grievance and "job bumping" provisions. Finally, Puma alleged that the changes in the conditions of the inmates' incarceration (such as the removal of the plexiglass cell fronts) would subject the guards to safety hazards in violation of their contractual rights.

On October 16, 1985, Judge Telesca granted the motion for intervention only "to the limited extent necessary for the [intervenors] to be heard on the [inmates'] application for discovery and examination of certain personnel files belonging to various correction officers" and reserved decision on the remainder of the application.

Judge Telesca finally, on January 28, 1988, granted the inmates' request for a preliminary injunction, which had been filed on September 20, 1985. The preliminary injunction requires the defendants to provide mental health services in the SHU in accordance with specified procedures. Included in the list of procedures are modifications in the staffing of the SHU and the requirement of proper training, monitoring and disciplinary procedures for the guards. We affirmed Judge Telesca's grant of a preliminary injunction in June 1988. *Eng v. Smith*, 849 F.2d 80 (2d Cir.1988).

On April 1, 1988, after much discovery had been conducted and the preliminary injunction granted, Judge Telesca denied the intervenors' request for total intervention. He did, however, grant the intervenors permission to renew their motion in the future should circumstances indicate the need to do so.

Judge Telesca denied the request for intervention on the grounds that the application was untimely and that the intervenors' interests were adequately represented by the named defendants in the case. He found that the defendants had vigorously sought to protect the records of the guards and argued strongly on behalf of the proposed intervenors. Therefore, he held that the denial of the application would not unduly prejudice the interests of Council 82, Stranahan or Dylag. This appeal followed.

## II.

We hold that we are without jurisdiction to consider the intervenors' interlocutory appeal. Because the intervenors are now parties to the proceedings by virtue of Judge Telesca's grant of intervention for discovery purposes, they will have a full opportunity to raise their claim on appeal following final disposition on the merits in the district court. The fact that they may appeal later precludes us from hearing their appeal now. Moreover, Judge Telesca's decision will not jeopardize their ability adequately to represent their interests under their collective bargaining agreement. These interests are not, despite the intervenors' assertions to the contrary, of primary importance in this action, which concerns the deprivation of the constitutional rights of the inmates by certain correction officers and the state authorities.

We arrive at our conclusion that this appeal is premature through reference to the finality doctrine set forth in 28 U.S.C. § 1291 and the collateral order exception thereto. Section 1291 provides that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts...." While Judge Telesca's order clearly is not final in the traditional sense, in that it does not "end[] the litiga-

tion on the merits and leave[ ] nothing for the court to do but execute the judgment", *see Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945), *quoted with approval in Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 107 S.Ct. 1177, 1181, 94 L.Ed.2d 389 (1987), we must address Council 82's argument that his order granting intervention for the sole purpose of seeking to protect certain records from discovery is within that class of orders deemed reviewable under the collateral order exception. The intervenors argue that the order denying them full intervention is sufficiently separate from, and collateral to, the rights asserted in the underlying action, and of such importance, that we should not require their appeal to await final judgment in the case. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).

To be reviewable as a collateral order, a decision must "(i) 'conclusively determine the disputed question'; (ii) 'resolve an important issue completely separate from the merits of the action'; and (iii) 'be effectively unreviewable on appeal from a final judgment.'" *Stringfellow, supra,* 107 S.Ct. at 1182, *quoting from Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). We hold that Judge Telesca's limitation of intervention is reviewable on appeal from a final judgment and also that it does not involve an important issue completely separate from the merits of the action.

The intervenors argue that the district court's decision denying them status as a full intervenor as of right is immediately appealable because it deprives them of the ability to protect their bargained-for contract rights. They claim that the effect of the district court ruling is their complete exclusion from the lawsuit and a consequential inability to protect their interests. Had Judge Telesca's order completely severed them from the litigation, that denial of leave to intervene would indeed have been interlocutorily appealable. *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947). However, the inter-venors have not been entirely excluded from the case. They are parties to it and may appeal any part of the judgment that they feel adversely affects their interests. Moreover, Judge Telesca explicitly provided in his order denying the intervenors full intervention that their application could be renewed in the event of future developments.

We are guided by *Stringfellow, supra,* in which the Supreme Court addressed this same question of whether a restricted grant of permissive intervention should be immediately appealable as a denial both of intervention as of right and of unrestricted permissive intervention. Here, as in *Stringfellow*, an organization seeks status as an intervenor to protect interests that may be affected by the outcome of the litigation but that are peripheral to the gravamen of the complaint. In *Stringfellow*, Concerned Neighbors in Action (CNA), a nonprofit community organization whose members lived near an abandoned hazardous waste disposal site, sought full intervention in a suit brought against the owners, operators and users of the dump-site by the United States and the State of California to compel a cleanup of the dump-site. CNA moved for intervention as of right, arguing that it had a substantial interest in the suit that would not be repre-sented adequately by the other parties and that, in such a large-scale litigation, the intervention decision would not be effec-tively reviewable after entry of a final judgment on the merits. This claim is quite similar to the intervenors' assertions here that their interests in maintaining the sanctity of their collective bargaining agreement with the state may be jeopar-dized if the relief the inmates request is granted.

The Supreme Court in *Stringfellow* disa-greed with CNA, holding that the inter-venor had become a party to the suit by virtue of the grant of restricted permissive intervention and therefore could obtain ef-fective post-judgment review of its claims concerning the scope of the grant of inter-vention. The Court concluded that the court of appeals lacked jurisdiction to hear

the appeal. Here, Council 82 may later appeal the district court's limited grant of intervention; the Court in *Stringfellow* explicitly refused to extend the collateral order doctrine to provide pre-judgment relief to any party enjoying "the same rights of appeal from a final judgment as all other parties" to the litigation. *Id.* 107 S.Ct. at 1183. *See also Securities and Exchange Commission v. Chestman*, 861 F.2d 49 (2d Cir.1988) (a grant of permissive intervention under Rule 24(b) may not be challenged in an interlocutory appeal).

The intervenors attempt to distinguish *Stringfellow* on the ground that the grant here of highly restricted permissive intervention, with leave to intervene at only one point in the proceedings, is tantamount to a complete denial of intervention and thus is susceptible to immediate appellate review under *Railroad Trainmen*. They urge us to distinguish *Stringfellow* and *Shore v. Parklane Hosiery Co.*, 606 F.2d 354 (2d Cir.1979), on the ground that Judge Telesca's decision allows them a much more limited role than that which the intervenors enjoyed in *Stringfellow* and *Parklane Hosiery*.

We find this argument unpersuasive. The holding in *Railroad Trainmen* permitting prejudgment appeal depended upon the fact that the putative intervenor had been terminated as a party. Here, as in *Parklane Hosiery* and *Stringfellow*, the intervenor was made a party to the litigation, albeit only for a specific purpose. The *Stringfellow* rule does not provide for any calculation of the extent to which the intervenors are involved. While Council 82 correctly points out that intervention only to contest discovery of certain personnel records is indeed an extremely limited grant of intervention, the essential fact remains that it can challenge that grant on appeal following a final determination of the case on the merits. The restricted leave to intervene is, therefore, not tantamount to a complete denial of intervention. Moreover, the question of the degree of Council 82's intervention may be reopened since Judge Telesca specifically informed the intervenors that they would be permitted to renew their application if such action

becomes necessary in order to protect their interests.

The intervenors contend that their rights on appeal after final judgment will be limited to only those parts of the final judgment that implicate its basis for requesting intervention. We do not agree, however; the intervenors may appeal any aspect of the final judgment that affects them. *Stringfellow* explicitly recognized that an intervenor has the same right of appeal as any other party, *Stringfellow, supra,* 107 S.Ct. at 1182, and that the court of appeals may consider whether a broader grant of intervention might have affected the final judgment. *Id.* at 1183.

We also disagree with the intervenors' argument that their interests are in grave danger if they are not permitted to intervene as of right and that their need to be involved in all aspects of the litigation is thus greater than was the need of CNA in *Stringfellow*. The nature of the underlying action here is such that the intervenors' interests must be subordinated to those of the named parties.

The conduct of the guards assigned to the SHU must be such as to ensure against any violations of the inmates' constitutional rights. This consideration must take precedence over any provision of the collective bargaining agreement to which Council 82 is a party. The inmates allege that the state officials sanction the guards' continuance of egregious practices that unconstitutionally deprive the inmates of their rights. If part of the relief fashioned by the court directs changes in the state's practices regarding staffing and training in the SHU, the constitutional necessity of effecting those changes will outweigh any burdens imposed on the collective bargaining agreement that such changes might require. The fact that the contract provides methods for the hiring, training and safety of the guards does not justify the continuance of any constitutional violations. There will be ample opportunity later for the state and Council 82 to negotiate those alterations to ensure that the guards' interests are not unduly compromised. In the meantime, Judge Telesca's decision to permit the

intervenors to intervene to the extent necessary to protect the privacy interests of Council 82's members, with leave to reapply for more extensive intervention should other rights of the guards be threatened, provides the intervenors with an appropriate role in the ongoing litigation.

Appeal dismissed.

MAHONEY, Circuit Judge (concurring):

I am in general agreement with Judge Lumbard's excellent opinion, and write separately only to address the two paragraphs that precede its concluding sentence.

The proposed intervenors' interests are obviously subordinated to any constitutional rights of the plaintiffs-appellees, in the sense that no collective bargaining agreement could authorize prison guards to violate the constitutional rights of prisoners. Prison guards and organizations representing them nonetheless have standing to assert their contractual rights in litigation where prisoners claim a violation of their constitutional rights. *See Forts v. Ward,* 621 F.2d 1210, 1215 n. 8 (2d Cir.1980), and authorities there cited. It seems especially inappropriate to assert or imply that prison guards whose specific removal from their posts is sought in this litigation are relegated to post-litigation collective bargaining to protect their interests.

In any event, I agree that we do not have jurisdiction over this appeal, and assume with the majority that Judge Telesca will allow broadened intervention should that be appropriate as the litigation proceeds.