**[J-59-2015 and J-60-2015] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| SUGARHOUSE HSP GAMING, LP, | : | No. 175 EM 2014 |
| | : | |
| Petitioner | : | Appeal from the Pennsylvania Gaming |
| | : | Control Board's November 18, 2014 |
| | : | Order granting Stadium Casino, LLC's |
| v. | : | Application for Licensure as a Category |
| | : | 2 Slot Machine Licensee in the City of |
| | : | Philadelphia. |
| PENNSYLVANIA GAMING CONTROL | : | |
| BOARD, | : | SUBMITTED: August 27, 2015 |
| | : | |
| Respondent | : | |
| | : | |
| STADIUM CASINO, LLC, | : | |
| | : | |
| Intervenor | : | |

| | | |
|---|---|---|
| MARKET EAST ASSOCIATES, LP, | : | No. 176 EM 2014 |
| | : | |
| Petitioner | : | Appeal from the Pennsylvania Gaming |
| | : | Control Board's November 18, 2014 |
| | : | Order granting Stadium Casino, LLC's |
| v. | : | Application for Licensure as a Category |
| | : | 2 Slot Machine Licensee in the City of |
| | : | Philadelphia. |
| PENNSYLVANIA GAMING CONTROL | : | |
| BOARD, | : | SUBMITTED: August 27, 2015 |
| | : | |
| Respondent | : | |
| | : | |
| STADIUM CASINO, LLC, | : | |
| | : | |
| Intervenor | : | |

<u>**CONCURRING OPINION**</u>

**JUSTICE WECHT**                                   **DECIDED:  March 29, 2016**

I join the learned majority's opinion in full. I write separately to suggest caution with respect to certain secondary issues that appear at the margins of this case.

With the benefit of 20/20 hindsight, the Pennsylvania Gaming Control Board's denial in part of SugarHouse HSP Gaming, LP's petition to intervene was inconsequential because Market East Associates, LP,[1] presented the same arguments regarding sections 1304 and 1330 of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101, *et seq*. ("the Gaming Act"), that SugarHouse sought to present to the Board and argues before this Court.[2] Thus, denying SugarHouse's

---

[1] Hereinafter, I refer to these parties as "the Board," "Sugarhouse," and "Market East," respectively.

[2] The Board also argues that the Office of Enforcement Counsel ("OEC"), which represents the Bureau of Investigation and Enforcement ("BIE"), adequately represented SugarHouse's interests, at least with respect to section 1330. While OEC is charged with presenting BIE's findings regarding the rigorous eligibility criteria set forth by the Gaming Act, in this case OEC declined to offer proposed legal conclusions regarding section 1330. Rather, when invited to offer legal argument regarding Watche Manoukian's section 1330 compliance vis-à-vis his ownership and financial interests in Stadium Casino, LLC, Chief Enforcement Counsel Cyrus Pitre offered that it was a "complex" issue "taking into consideration the different definitions of an affiliate, an intermediary controlling interest, to decide Mr. Manoukian's relationship to Sterling [Investors] Trust through Sterling Fiduciary Services" as well as his ownership interest in Greenwood Racing; observed that the determination would be "precedent[-]setting"; and asserted that the legal determination should be left to the Board. Notes of Testimony, Suitability Hearing for Stadium, 1/30/2014, at 85-86. Mr. Pitre added that he was "a little hesitant to give [his] opinion, which could, you know, impact how the Board makes its decision or comes to . . . its interpretation." Id. at 86. Thus, Chief Enforcement Counsel Pitre not only left open the legal question as to which SugarHouse wished to advocate but emphasized that his reason for doing so was to *avoid* influencing the Board's interpretation of section 1330. This is the polar opposite of advocacy, and as to law and facts alike, a judicial or quasi-judicial proceeding depends upon full and fair adversarial presentations. That being said, the majority does not clearly hold that OEC represented SugarHouse's interests, focusing instead upon the fact that Market East presented arguments "duplicative" with those SugarHouse has presented before this Court and concluding that Market East adequately represented SugarHouse's interests. I agree with that assessment.

intervention regarding those sections did not deprive the Board—and does not deprive this Court—of advocacy regarding SugarHouse's substantive claims, and causes SugarHouse no clear injury. On this basis alone, I would deny SugarHouse the prerogative to pursue more than the lone issue on appeal as to which Market East does not share its interests—*i.e.*, the question of market concentration, which affects SugarHouse's interest as the holder of one of the two Category 2 licenses allocated to Philadelphia by the Gaming Act.

That being said, my joinder in the majority's reasoning is premised upon my understanding that the majority opinion contains no suggestion that a party whose intervention has been limited improperly is precluded from pressing issues on appeal as to which that party was denied intervention in the tribunal below.[3] Neither the Gaming Act, the regulations promulgated thereunder, nor the authorities cited by the majority stand for such a broad proposition.[4]

---

[3]    See Maj. Op. at 19 & n.21.

[4]    The majority cites one regulation and two cases that could be read to support such a limitation, notwithstanding its caveat regarding the issue's immateriality to our analysis. See Maj. Op. at 19-20; id. at 19 n.21 (disclaiming "consideration of the breadth of an intervenor's right to be heard before this Court on issues for which it was **erroneously** denied intervention" (emphasis in original)). First, it cites a Board regulation that provides that "[a] party may appeal final orders of the Board in accordance with the [A]ct, in the form prescribed in the Pennsylvania Rules of Appellate Procedure." 58 Pa. Code § 494a.11. Next, it cites this Court's opinion in Society Hill Civic Association v. Pennsylvania Gaming Control Board, 928 A.2d 175, 183 (Pa. 2007), which stands for the uncontroversial proposition that, under the Gaming Act, individuals who fail entirely to intervene in Board proceedings lack standing to appeal the Board's decision. Finally, the majority cites Appeal of Municipality of Penn Hills, 546 A.2d 50 (Pa. 1988), as "recognizing the right of an administrative tribunal to limit intervention through its rules of procedure, and that [the] scope of [the] party's intervention before the administrative tribunal is determinative of its rights to pursue issues on appeal." Maj. Op. at 20. In Penn Hills, we recognized that, "[g]enerally, once
(continued…)

In Pennsylvania, an order entirely denying intervention is no longer, as it once was, an interlocutory order that is appealable as of right. See, e.g., Nemirovsky v. Nemirovsky, 776 A.2d 988, 991 (Pa. Super. 2001) ("As to whether the [order denying intervention] is final, the Official Note to [Pa.R.A.P. 341] explains that an order denying a petitioner the right to intervene no longer may be deemed a final order within the meaning of Rule 341, following the 1992 amendments to that Rule."); Larock v. Sugarloaf Twp. Zoning Hearing Bd., 740 A.2d 308, 311-12 (Pa. Cmwlth. 1999) (same). Rather, the immediate appealability of such an order is determined under the collateral order doctrine in the appellate court's discretion. See Nemirovsky; Larock, *supra*. Thus, when the collateral order doctrine criteria are met, an appellate court may accept a would-be intervenor's interlocutory appeal of a categorical denial of intervention. However, no Pennsylvania case establishes immediate appealability, discretionary or otherwise, of an order granting a party the right to intervene as to some but not all issues as to which intervention is sought.

Federal courts, under rules that are similar to ours governing finality and the appealability of collateral orders, have held that, while orders entirely denying intervention as of right may be immediately appealable, orders granting only limited

---

(…continued)
intervention is allowed the intervenor is afforded all the rights of a party to the action," and that, under the rules of the Allegheny County Board of Property Assessment, "an intervenor participates in the appeal with all the attendant rights of any other party." 546 A.2d at 52. We also noted that, in assessing appellate rights in an administrative proceeding, "we must refer to the controlling administrative rules, as well as the enabling legislation, to determine what if anything was waived at the time this intervenor was admitted to participate in the appeal." Id. at 53. Penn Hills did not involve the Gaming Act or the regulations promulgated thereunder, and it did not address the effect of limited intervention before an administrative body upon the standing of the intervenor on appeal.

permissive intervention are not. See, e.g., Eng v. Coughlin, 865 F.2d 521, 525 (2d Cir. 1989). In Eng, the intervenor was granted intervention only to obtain discovery. The intervenor sought immediate appeal under the collateral order doctrine. The court of appeals found that no appeal would lie because the intervenors had not been "entirely excluded from the case," but rather were "parties to it and [could] appeal any part of the [final] judgment that they [felt] adversely affect[ed] their interests." Id. The Eng court relied in part upon the United States Supreme Court's decision in Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370 (1987), in which the Court refused to allow immediate appeal of an order allowing limited intervention. The Stringfellow Court rejected the intervenor's contention that, given the restrictions imposed upon its participation in the proceedings, its right to appeal would at best be only academic, holding instead that "none of the limitations [on the intervenor's participation in the lower tribunal] interfere with [its] ability to raise its claims on post[-]judgment appeal." Id. at 378. Other federal courts of appeals have reached similar conclusions.[5] While total

---

[5]     See Kartell v. Blue Shield of Mass., Inc., 687 F.2d 543, 549 (1st Cir. 1982) (denying immediate appeal of order granting limited intervention because "[i]t made appellants parties to the litigation, thus giving them the right to appeal from an unsatisfactory final order," whereupon the court of appeals could "review the district court's refusal to grant all of [intervenor's] requested relief"); Shore v. Parklane Hosiery Co., Inc., 606 F.2d 354, 356-57 (2d Cir. 1979) (same); cf. Rhode Island v. United States EPA, 378 F.3d 19, 27-28 (1st Cir. 2004) (denying immediate appeal of order denying intervention when would-be intervenor was granted *amicus curiae* status and could raise all available challenges on appeal from final order); Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n, 646 F.2d 117, 122-23 (4th Cir. 1981) (declining to remand case in which National Labor Relations Board erroneously was denied intervention, citing inefficiency, where Board could appeal "as defendant-intervenor from the district court's final judgment on the merits" and the record was sufficient to enable full review); Wheeler v. Amer. Home Prods. Corp., 582 F.2d 891, 896 (5th Cir. 1977) (holding that party whose intervention was restricted in non-appealable order could appeal issue as to which intervention was denied).

exclusion leaves intervenors no room to protect their interests, necessitating at least a discretionary channel for immediate appeal, it may be prudent to grant limited intervenors broader appellate rights, as at least some federal courts have done.[6]  This would allow such litigants to vindicate their due process rights fully in the event that the lower court erred in its partial denial of their interventions, without necessarily requiring a remand for further proceedings.[7]

At all events, in this case, the question is academic.  SugarHouse appears to have proffered no material evidence or argument regarding sections 1304 and 1330 that

---

[6]  See *supra* n.5.  Further complicating our inquiry, a close examination of the Board's regulations reveals a confusing set of terms and definitions.  First, only a "party" has a right to appeal.  58 Pa. Code § 494a.11(a).  A party is "[a] person who is named in or admitted to a proceeding before the Board and who has a direct interest in the subject matter of the proceeding."  58 Pa. Code § 491a.2.  An "intervener [*sic*]," however, is defined as "[a] person who petitioned to intervene in a proceeding and who was admitted by the board as a *participant* to a proceeding."  Id. (emphasis added).  A participant, in turn, is defined as "[a] person admitted by the Board to limited participation in a proceeding."  Id.  Thus, on a plain reading of the regulations, it credibly may be maintained that a person granted limited intervention, *i.e.*, a "participant," has no standing to appeal, insofar as the regulations appear to distinguish participants from parties and restrict the right to appeal only to the latter.  Conversely, an intervenor might be allowed to appeal on the basis that both an intervenor and a party are defined by reference to the "admission" to a Board proceeding.  This confusion may create difficulties in a future case.

[7]  Cf. Rhode Island, 378 F.3d at 28 ("To say that Rhode Island's interests will not be irretrievably prejudiced in the absence of an immediate appeal is not to say that postponing review until the occurrence of final agency action is cost-free.  By refusing to intercede at this stage, we introduce the prospect of duplicative proceedings should the denial of intervention eventually be deemed improvident.  That sort of cost is real, but it is an almost inevitable byproduct of the finality rule in ordinary litigation as well as in administrative adjudication.").

was not also presented by Market East.[8] The same is true before this Court. Thus, SugarHouse's interests have been represented adequately throughout these proceedings, and intervention as to sections 1304 and 1330 is not warranted under 58 Pa. Code § 441a.7(z)(2) ("A person may file a petition to intervene under this subsection if the person has an interest in the proceeding which is substantial, direct and immediate *and if the interest is not adequately represented in a licensing hearing*" (emphasis added)); accord 58 Pa. Code §§ 493a.12(c)(2). Consequently, it is within our discretion to deny intervention as to these issues solely upon that basis.

---

[8] Indeed, Market East was permitted to present its argument both in writing and during the licensing hearings. However, even had SugarHouse been permitted to intervene fully, the Board in its discretion could have limited SugarHouse's participation to written submissions. See 58 Pa. Code 441a.7(z)(6).