J-A26032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VINCENT FITZPATRICK AND GEORGIA FITZPATRICK, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| ABC CORPORATION, TOLL BROTHERS REAL ESTATE, INC., TOLL BROTHERS REALTY PENNSYLVANIA, LLC, TOLL BROTHERS, INC., TOLL PA IV, LP,  TOLL MID-ATLANTIC LP, COMPANY, INC., ADVANCED DRYWALL  SYSTEMS II, LLC, L & W SUPPLY CORPORATION, JOHNSTON BUILT, LLC, BUILDERS SERVICES GROUP, INC. D/B/A SYNERGY INSULATION, INC. D/B/A MASCO CONTRACTOR SERVICES, LLC, BUILDERS SERVICES GROUP, INC. D/B/A TRUTEAM BUILDER SERVICES GROUP, INC. AND TOPBUILD CORPORATION | : : : : : : : : : : : : : : : | |
| | : | |
| | : | |
| APPEAL OF: SELECTIVE WAY INSURANCE COMPANY | : : | No. 753 EDA 2023 |

Appeal from the Order Entered May 27, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  200600660

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 19, 2024**

Appellant, Selective Way Insurance Company, as subrogee of Toll PA IV,

L.P. ("Toll"), appeals from the May 27, 2022 order entered in the Philadelphia

County Court of Common Pleas, granting summary judgment in favor of

Builder Services Group and related defendants (collectively, "BSG") and the

separate order entered on the same date denying Toll's motion for summary judgment.[1]  We vacate and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. Toll, the general contractor for a residence located in Center Valley, Pennsylvania, subcontracted BSG to install insulation in the residence pursuant to a Master Construction Agreement.  BSG employed Vincent Fitzpatrick as an insulation installer.  During construction, Mr. Fitzpatrick fell through a hole in the site onto a concrete floor 25 feet below.  As a result of this accident, Mr. Fitzpatrick suffered brain damage, nerve damage, and broken bones, and is no longer able to work in any capacity.

Subsequently, Mr. Fitzpatrick and his wife, Georgia Fitzpatrick (collectively, "Plaintiffs" or "the Fitzpatricks"), commenced a civil action asserting claims of negligence against BSG, Toll, Toll Mid-Atlantic LP Company, Inc. ("Toll MAC"), Toll Bros., Inc. ("Toll Bros."),[2] and other parties.  The Toll Defendants filed their answer and new matter on August 28, 2020, which included, *inter alia*, a cross-claim against BSG.  In the cross-claim, the Toll Defendants alleged that Toll had entered into a Master Construction

---

[1] Although Appellant's notice of appeal listed an earlier April 11, 2022 order granting summary judgment in favor of BSG, as we explain ***infra***, the trial court later revoked that order and entered new orders on May 27, 2022 granting summary judgment in favor of BSG and denying Toll's motion for summary judgment.  We have amended the caption accordingly.

[2] We refer to Toll, Toll MAC and Toll Bros. collectively as "Toll Defendants."

Agreement with BSG, wherein BSG agreed to indemnify and hold harmless Toll against liability for any and all claims even if such claims resulted from Toll's negligence. Toll alleged that to the extent that BSG does not defend, indemnify or hold Toll harmless, BSG is in breach of the contract.

BSG filed an answer to the cross-claim on September 17, 2020, alleging that the Fitzpatricks' causes of action were limited by the Pennsylvania Workers' Compensation Act ("WCA"). On October 14, 2020, BSG filed an answer to the Toll Defendants' new matter denying that it breached any provision of the contract.

On February 4, 2022, the Toll Defendants filed a motion for summary judgment asserting that the Fitzpatricks' claims against Toll should be dismissed as Toll owed no duty to the Fitzpatricks; the Fitzpatricks' claims against Toll MAC should be dismissed because Toll MAC owed no duty to the Fitzpatricks; and the Fitzpatricks' claims against Toll should be dismissed because Toll was the statutory employer and thus entitled to statutory immunity under the WCA.

On February 17, 2022, BSG filed a cross-motion for summary judgment. BSG's motion sought dismissal of all claims and cross-claims against BSG, arguing it was Mr. Fitzpatrick's statutory employer, and the WCA should have been the sole and exclusive remedy for injuries sustained during his employment. BSG explained that it had paid Mr. Fitzpatrick a substantial amount of money pursuant to the WCA and was therefore shielded from

further liability.

On March 10, 2022, the Toll Defendants responded to BSG's motion for summary judgment, asserting that if the court found that BSG was Mr. Fitzpatrick's statutory employer, judicial consistency would also warrant a finding that Toll was also Mr. Fitzpatrick's statutory employer. Also in that response in a section called "new matter," Toll asserted a cross-motion for summary judgment with respect to its cross-claim against BSG for defense and indemnification. Toll argued that in the Master Construction Agreement, BSG explicitly waived WCA immunity as to Toll.

By order dated April 7, 2022, and filed April 11, 2022, the trial court granted BSG's motion for summary judgment. Nevertheless, the court did not expressly rule on Toll's motion for summary judgment with respect to its cross-claim against BSG for defense and indemnification. On April 14, 2022, Toll filed a motion seeking reconsideration of the order granting BSG's motion for summary judgment. On April 19, 2022, the trial court vacated the order granting summary judgment, pending a hearing on the motion to reconsider. The court conducted a hearing on May 25, 2022. After the hearing, by order dated May 25, 2022 and filed May 27, 2022, the court reinstated the order granting BSG's motion for summary judgment. That same day, the trial court also entered an order granting summary judgment in favor of Toll MAC, but denied the motion for summary judgment as to Toll and Toll Bros. Again, the court did not mention Toll's cross-motion for summary judgment on its cross-

claim for contractual defense and indemnification.

Prior to trial, on January 4, 2023, the Fitzpatricks reached a settlement with the remaining defendants and filed a letter with the trial court, stating that they were writing to advise that the parties had amicably resolved the matter and there would be no need for a trial date. (*See* Letter, filed 1/4/23, at 1). The letter further stated that the Fitzpatricks would "file the appropriate closing documents once the settlement funds are distributed." (*Id.*) The docket entry for January 4, 2023 states that the case settled, and that notice had been sent to all parties.

On February 3, 2023, Toll filed a notice of appeal from the trial court's summary judgment orders of April 11, 2022, and May 27, 2022. However, on March 1, 2023, Toll withdrew and discontinued its appeal. On March 14, 2023, the Fitzpatricks filed a *praecipe* to settle and discontinue the matter which requested that the trial court mark all claims settled, discontinued, and ended with prejudice regarding Toll, Toll Bros., Toll MAC, Advanced Drywall Systems, II, LLC, L&W Supply Corporation, and Johnston Built, LLC, with the exception of any contribution and/or indemnification claims asserted by any settling defendant against BSG and related co-defendants.

On March 15, 2023, Appellant filed an emergency petition seeking to intervene as a subrogee of Toll. Following a hearing on March 16, 2023, the trial court entered an order (docketed March 17, 2023), which granted the petition to intervene. Appellant filed a notice of appeal on March 17, 2023.

The trial court subsequently ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant complied on April 12, 2023.

On appeal, Appellant raises a single issue for review:

> Did the trial court err when it granted BSG's Motion for Summary Judgment and denied Toll's Motion for Summary Judgment where the written agreement between Toll and BSG required BSG to defend and indemnify Toll for the underlying claims asserted against Toll?

(Appellant's Brief at 4).

As preliminary concerns, we must address both the timeliness of the appeal and Appellant's standing in this matter.[3] "It is well-established that timeliness is jurisdictional, as an untimely appeal divests this Court of jurisdiction to hear the merits of the case." ***Affordable Outdoor, LLC v. Tri-Outdoor, Inc.***, 210 A.3d 270, 274 (Pa.Super. 2019) (internal quotation marks omitted). An appeal from a trial court's final order must be filed within 30 days after the entry of the order from which the appeal is taken. ***See*** Pa.R.A.P. 902, 903.

Here, the parties dispute when the April 11, 2022 and May 27, 2022 orders granting summary judgment in favor of BSG became final and appealable. Appellant contends that the final order in this case did not take

---

[3] Following oral argument, this Court directed the parties to file supplemental briefs regarding timeliness and standing. The parties have complied with our directive.

place until March 14, 2023, after the Fitzpatricks filed the *praecipe* to settle, discontinue, and end. According to Appellant, the January 4, 2023 letter making the trial court aware of the settlement and asking the court to remove the case from the trial list, did not constitute a final disposition of all claims and parties. Rather, Appellant asserts that the settlement was not complete until the defendants paid the settlement funds, and the Fitzpatricks filed the *praecipe* to settle, discontinue, and end. Because Appellant filed a notice of appeal only three days after the filing of the *praecipe*, and within the requisite 30-days, Appellant argues that its appeal is timely.

In response, BSG argues that an order is final and appealable when all remaining claims are resolved regardless of whether a *praecipe* is filed. BSG contends that the *praecipe* to settle, discontinue, and end did not functionally resolve or provide notice of the resolution to the trial court; rather, the notice was already provided when the Fitzpatricks informed the court of the settlement on January 4, 2023. Further, BSG alleges that the Fitzpatricks' execution of the release and issuance of the settlement funds were not conditioned upon the filing of a *praecipe*. BSG claims that the filing of the *praecipe* was merely a procedural mechanism to notify the trial court to mark the matter closed and did not actually conclude the action. According to BSG, the claims in the instant matter were resolved on January 4, 2023, or at the latest, February 1, 2023, upon the Fitzpatricks' execution of the release, and therefore, the time to appeal expired on or before March 3, 2023. Thus, BSG

concludes that Appellant's appeal filed on March 17, 2023 was untimely. For the following reasons, we agree with Appellant that the appeal is timely.

The Pennsylvania Rules of Appellate Procedure define a final order as any order that disposes of all claims and of all parties. **See** Pa.R.A.P. 341(b)(1). "[I]n an action involving multiple defendants, and in the absence of an express determination by the trial court under Rule 341(c), an order granting summary judgment as to one party is treated as appealable as of right only after the disposition of the claims involving the remaining parties." **K.H. v. J.R.**, 573 Pa. 481, 490, 826 A.2d 863, 869 (2003) (stating order granting one defendant's motion for summary judgment became final and appealable when judgment was entered after verdict in favor of remaining defendant); **Jobe v. W.P. Metz Refining**, 664 A.2d 1015, 1017 n.3 (Pa.Super. 1995), *appeal denied*, 544 Pa. 659, 66 A.2d 1299 (1996) (explaining that prior orders granting summary judgment did not become final and appealable until entry of order granting summary judgment as to remaining defendants). Therefore, an order is final when it "ends the litigation, or alternatively disposes of the entire case." **Baumbach v. Lafayette Coll.**, 272 A.3d 83, 88 (Pa.Super. 2022).

This Court has had the opportunity to address the effect of a *praecipe* as it relates to the finality of an order on several occasions. For example, in **Baker v. Cambridge Chase, Inc.**, 725 A.2d 757 (Pa.Super. 1999), *appeal denied*, 560 Pa. 716, 745 A.2d 1216 (1999), the trial court granted the

plaintiffs' motion for summary judgment as to the sole remaining defendants in the case. Nevertheless, the court acknowledged that two counts remained against the defendants which the motion had not discussed. Subsequently, counsel for plaintiffs filed a *praecipe* to settle, discontinue, and end the case. The *praecipe*, therefore, "had the effect of withdrawing the two remaining claims against the four remaining parties." **Id.** at 762. Thus, this Court observed it was the administrative filing of the *praecipe* that "finally disposed of all claims and/or parties," rather than the order granting summary judgment. **Id.** at 761.

In **Baumbach, supra**, the trial court entered an order granting the appellants' petition to approve their settlement with remaining defendants. Significantly, the settlement agreements included release provisions providing that "upon receipt of the settlement proceeds, [the a]ppellants shall direct their attorneys to file a *Praecipe* to Settle, Discontinue, and End." **Id.** at 87. Thus, the court's order approving the terms of the settlement agreements included "the provision setting receipt of the settlement proceeds as a condition precedent to [the a]ppellants filing a *praecipe* to settle, discontinue, and end their claims against the [remaining defendant]." **Id.** After those defendants remitted the settlement proceeds, the appellants filed a *praecipe* to settle, discontinue, and end. The appellants filed an appeal within 30 days of the *praecipe*, challenging prior interlocutory orders in the case. **See id.** In discussing the timeliness of the appeal, this Court explained that the trial

court's order granting the appellants' petition to approve their settlement agreements did not end the litigation or dispose of the entire case. "Rather, it approved the agreements which provided, *inter alia*, that [the a]ppellants would file a *praecipe* to settle, discontinue, and end this action as to the remaining defendants…once they had paid [the a]ppellants the settlement proceeds." **Id.** Thus, it was only after receiving those payments that the appellants could timely file their appeal from prior interlocutory orders in the case. **Id.**

Similarly, in **Ritz v. Ramsay**, 305 A.3d 1056 (Pa.Super. 2023), the trial court approved the appellants' petition for partial settlement as to one defendant. The court had already sustained the preliminary objections of other defendants in the case. The petition for partial settlement contemplated future payment of settlement proceeds to the appellants. The appellants subsequently filed a *praecipe* to settle and discontinue the case as to the settling defendants. The appellants filed an appeal within 30 days of the *praecipe* seeking to challenge the prior order sustaining the other defendants' preliminary objections. In considering the appeal as timely filed, this Court relied on **Baumbach**, and held that the court's order approving the settlement agreement did not end the litigation or dispose of all parties; "the order permitted [the a]ppellants and [the settling defendant] to execute their settlement agreement. Then, after [the a]ppellants' receipt of the settlement funds, they filed a *praecipe* to settle, discontinue, and end as to [the settling

defendant]. With that *praecipe*, …all claims and all parties had been disposed of, and the litigation ended." *Id.* at 1060.

Instantly, on January 4, 2023, the Fitzpatricks filed a letter informing the trial court that the remaining parties[4] had amicably resolved the matter, that there would be no need for a trial date, **and that the Fitzpatricks would file closing documents upon distribution of the settlement funds**. (Letter, 1/4/23, at 1) (emphasis supplied). That same day, the trial court docket reflected that the case was "settled prior to assignment for trial…by the [c]ourt," and notice pursuant to Pa.R.C.P. 236 was sent to all parties.

Similar to *Baumbach* and *Ritz*, the letter in this case contemplated further action—specifically, that the Fitzpatricks would file "closing documents" (*i.e.*, a *praecipe*) once settlement funds were distributed. (Letter, 1/4/23, at 1). Only after the funds were distributed did the Fitzpatricks file a *praecipe* which requested the court to "mark all claims settled, discontinued, and ended with prejudice."[5] (*Praecipe*, 3/14/23, at 1). Thus, the March 14, 2023 *praecipe* had the effect of withdrawing the remaining claims against the remaining defendants and disposing of the entire case. *See Ritz, supra*;

---

[4] The remaining parties included: the Fitzpatricks, the remaining Toll Defendants, Advanced Drywall Systems, II, LLC, L&W Supply Corporation, and Johnston Built, LLC.

[5] The *praecipe* also provided an exception for "contribution and/or indemnification claims" asserted by any settling defendant. (*Praecipe*, 3/14/23, at 1).

***Baumbach, supra***. Accordingly, Appellant's appeal is timely.

We next turn to whether Appellant has standing to bring the instant appeal. In its supplemental brief, BSG suggests that Appellant lacks standing because it did not intervene during the pendency of the action. Rather, Appellant intervened after the Fitzpatricks had filed a *praecipe* for discontinuance. BSG also claims that Appellant is not aggrieved by the entry of summary judgment in favor of BSG where Appellant did not take part in litigation of that motion. According to BSG, Appellant cannot be aggrieved merely because it was granted status as an intervenor.

Initially, we must consider whether BSG preserved its challenge to Appellant's standing on appeal. It is well settled that a party's lack of standing is not jurisdictional and can be waived if a timely objection is not made. ***See In re Condemnation by Urban Redevelopment Auth. of Pittsburgh***, 590 Pa. 431, 437 n.6, 913 A.2d 178, 181 n.6 (2006) (stating: "[T]he courts of this Commonwealth view the issue of standing as nonjurisdictional and waivable"). ***See also In re Duran***, 769 A.2d 497, 501 n.2 (Pa.Super. 2001) (stating "the issue of standing cannot be raised *sua sponte* and is waived if not properly raised").

Here, after Appellant filed its petition to intervene, the trial court entered a rule upon all parties to show cause why the relief requested should not be granted. Thereafter, no party filed any response in opposition to Appellant's petition to intervene. Ultimately, following a hearing, the court granted

Appellant's petition. Although BSG raises a challenge to Appellant's standing in supplemental briefing on appeal, BSG fails to inform this Court of how it preserved that challenge before the trial court by objecting to Appellant's petition to intervene in response to the rule to show cause, or at the hearing.[6] Therefore, we deem BSG's challenge to Appellant's standing as waived on appeal.[7] *See In re Condemnation by Urban Redevelopment Auth. of Pittsburgh, supra*; *In re Duran, supra*. Therefore, we turn to Appellant's issue on appeal.

_____

[6] There are no notes of testimony from the March 16, 2023 hearing on Appellant's petition to intervene in the certified record. Additionally, following an informal inquiry by this Court, we were unable to obtain same. Thus, nothing in the record indicates that BSG preserved a challenge to Appellant obtaining intervenor status in the trial court.

[7] We further note that an intervenor's right to participate in an appeal is not contingent upon the participation of the original appellant. *See Appeal of Municipality of Penn Hills*, 519 Pa. 164, 168, 546 A.2d 50, 52 (1988) (stating: "Generally, once intervention is allowed the intervenor is afforded all the rights of a party to the action, and unless otherwise specified an intervenor's right to participate in an appeal is not contingent upon the continued participation of the original appellant") (citations omitted). Here, Appellant's policy provided a subrogation interest in Toll and Advanced Drywall II, LLC's litigation. (*See* Emergency Petition to Intervene, 3/15/23, Ex. 3, Selective Insurance Policy S 196600908). The trial court permitted Appellant to intervene to protect those subrogation rights. *See Van Den Heuval v. Wallace*, 555 A.2d 162, 163 (Pa.Super. 1989) (explaining that subrogee generally has right to intervene in action to protect its subrogation rights). As such, even though Appellant was not directly a party to the orders granting BSG's motion for summary judgment, we agree with Appellant that it was adversely impacted by the summary judgment entered in favor of BSG. *See In re Nadzam*, 203 A.3d 215, 220-21 (Pa.Super. 2019) (explaining that party has standing where it can establish it has been aggrieved by controversy; "A party is aggrieved for purposes of establishing standing when the party has a substantial, direct and immediate interest in the outcome of litigation").

Appellant argues that the trial court erred in granting BSG's motion for summary judgment where BSG contractually agreed to indemnify Toll. Appellant contends that under the plain and unambiguous language of the Master Construction Agreement, BSG was required to defend and indemnify Toll for all claims, including those arising from Toll's negligence. Appellant concludes that the facts are undisputed, and the application of the law to those facts should result in the entry of summary judgment in favor of itself as subrogee of Toll. For the following reasons, we conclude that some limited relief is due.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of America*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial court's grant of summary judgment:

[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact.  We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.  All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action.   Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.  In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006)

(internal citations and quotation marks omitted).

In interpreting a contract, "[t]he intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Thomas Rigging & Const. Co. v. Contraves, Inc.*, 798 A.2d 753, 755 (Pa.Super. 2002) (citation omitted).  "[W]hen the language of a contract is

clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document," and "this Court need only examine the writing itself to give effect to the parties' understanding. [We] must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 665 (Pa.Super. 2014) (citation omitted).

"However, … where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Thomas Rigging & Const. Co., supra* at 755-56 (citation omitted).

> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. Furthermore, reviewing courts will not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. Finally, while ambiguous writings are interpreted by the finder of fact, unambiguous ones are construed by the court as a matter of law.

*Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 653, 976 A.2d 474, 483 (2009) (citations and some quotation marks omitted). *See also Murphy v. Duquesne Univ. Of The Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 430 (2001) (stating: "[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts").

The WCA generally provides a remedy for employees who seek to recover for injuries sustained during the course of their employment. ***See*** 77 P.S. § 481. Section 481(b) of the WCA provides as follows:

> (b) In the event injury or death to an employe[e] is caused by a third party, then such employe[e], his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employe[e]s, representatives acting on their behalf or at their request **shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action**.

77 P.S. § 481(b) (emphasis added). In other words, pursuant to Section 481(b), "a third party may not seek contribution or indemnity from the employer, even though the employer's own negligence may have been the primary cause of the employee's injury, **absent an express provision for indemnity in a written contract**." ***Bester v. Essex Crane Rental Corp.***, 619 A.2d 304, 306-07 (Pa.Super. 1993) (*en banc*) (citation omitted) (emphasis added).

Instantly, Appellant relies on the following language in the Master Construction Agreement, which Appellant claims constitutes an express provision for indemnity to satisfy the exception under Section 481(b):

> Contractor and its subcontractors waive any provision of state, federal or local workers' compensation law that prevents the Toll Companies from seeking contribution,

indemnification or damages from Contractor and/or its subcontractors if any employee, agent or invitee of Contractor or its subcontractors commences litigation or makes a demand against the Toll Companies for any injury or damage actually or allegedly arising from the performance, existence or condition of the Work.

(Master Construction Agreement, 1/11/13, at 3, ¶7(G)). This is the same language on which Toll relied when it initially filed a cross-claim against BSG on August 28, 2020. Toll subsequently sought summary judgment on its cross-claim based on this language on March 10, 2022.[8]

On April 11, 2022, the court issued an order granting BSG's motion for summary judgment. Nevertheless, the court did not expressly rule on or mention Toll's competing motion for summary judgment concerning its cross-claim against BSG for contractual defense and indemnification. Toll subsequently filed a motion for reconsideration noting that the court had not ruled on its motion, and the court granted reconsideration and vacated its April 11, 2022 order. The court conducted a hearing on May 25, 2022, during which Toll re-raised its request for summary judgment on its cross-claim against BSG for indemnification.

By order filed May 27, 2022, the court entered an order reinstating and granting summary judgment in favor of BSG. The court also entered a separate order that day denying Toll's motion for summary judgment. The

_____

[8] Toll's request for summary judgment was included as new matter in Toll's response to BSG's motion for summary judgment. (*See* Toll's Response in Opposition to BSG's Motion for Summary Judgment, 3/10/22, at 5-7).

court did not provide any opinion or analysis in support of its May 27, 2022 orders.

Significantly, in its Rule 1925(a) opinion, the trial court now states that "error may have been committed in granting the Motion for Summary Judgment filed by [BSG] as it pertained to Toll." (Trial Court Opinion, 6/29/23, at 1). The court further elaborated that:

> BSG and Toll dispute whether the language utilized in their contract created the written waiver required by the [WCA].
>
> Upon further review, this [c]ourt believes its summary judgment orders pertaining to BSG and Toll were conflicting. At the summary judgment level there remained genuine issues of material fact that needed resolution through further proceedings.
>
> The issues at the time of [the] summary judgment proceeding that remained to be resolved were: (1) whether or not BSG waived immunity in favor of Toll, and (2) whether or not BSG agreed to indemnify Toll against Toll's own negligence.

(*Id.* at 5-6).

In light of the trial court's lack of explanation or opinion at the time of the court's May 27, 2022 orders and in consideration of the court's statements in its Rule 1925(a) opinion, the best resolution of this appeal is to remand so that the trial court can decide whether the language provided in the Master Construction Agreement satisfies the exception set forth in Section 481(b) of the WCA. *See, e.g., Branton v. Nicholas Meat, LLC*, 159 A.3d 540, 562 n.21 (Pa.Super. 2017) (observing that trial court did not address issue in its opinion granting summary judgment and remanding so that court could rule

on issue in first instance). Upon remand, the trial court must determine if the language of the contract is clear and unambiguous in favor of one party, and if so, the court shall decide that question as a matter of law and enter summary judgment accordingly. ***See Thomas Rigging & Const. Co., supra***. ***See also Trizechahn Gateway LLC, supra***. On the other hand, should the trial court deem the contractual language ambiguous, the court should conduct further proceedings as necessary. ***See id.*** Accordingly, we vacate the May 27, 2022 orders granting BSG's motion for summary judgment and denying Toll's motion for summary judgment, and remand for further proceedings consistent with this decision.

Orders vacated. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2024